**UNITED STATES of America ex rel. STATE OF WISCONSIN, Plaintiff-Appellant,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION and Federal Home Loan Bank Board, Defendants-Appellees.**

**No. 12031.**

United States Court of Appeals Seventh Circuit.

Oct. 21, 1957.

Roy G. Tulane, Asst. Atty. Gen., John D. Winner, Stewart G. Honeck, Harold H. Persons, Madison, Wis., for plaintiff-appellant.

Horace Russell, Chicago, Ill., Jack C. Werner, Edward G. Minor, U. S. Atty., Milwaukee, Wis., Morton Hollander, Civil Division, Dept. of Justice, Washington, D. C., George Cochran Doub,

Asst. Atty. Gen., Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

This is an appeal by the state of Wisconsin from an order dismissing an action in the nature of a *quo warranto* filed by it in the name of the United States, with the consent of the district court, against appellee, First Federal Savings and Loan Association of Milwaukee, Wisconsin.

First Federal is a savings and loan association which operated from 1934 to 1954 at a single office in Milwaukee under a charter granted by the Federal Home Loan Bank Board pursuant to the Home Owners' Loan Act of 1933, 12 U.S.C.A. § 1461 et seq., and the Board's Regulations under that Act, 24 C.F.R. 141.13–141.15, inclusive.

In 1954, under authority of the Board's Regulation No. 145.15, First Federal established three limited agency offices in Milwaukee for servicing its mortgage loans and contracts and managing its real estate. These limited agencies did not accept applications for or negotiate loans and rendered no service in connection with savings accounts, these matters being handled exclusively at the main office.

In 1947, Wisconsin adopted a statute which prohibits its state financial institutions from operating agencies. Section 215.02(20) of the Wisconsin statute reads:

"(20) One office only. No savings and loan association or building and loan association carrying on business in this state shall operate or maintain any branch offices, paying or receiving stations, agencies or branch associations within this state."

On October 29, 1954, Wisconsin made a formal demand upon the United States Attorney General to institute this action to determine whether or not First Federal was exceeding its charter and operating contrary to the policy of the state. The Attorney General formally replied (citing decisions of the courts supporting the action of First Federal) and refused to have such action instituted in the name of the Attorney General, *"even assuming that quo warranto would be the appropriate type of proceeding in such a situation."* (our emphasis).

Following this refusal, the Attorney General of Wisconsin filed a petition in the United States District Court for the Eastern District of Wisconsin in the name of "United States of America *ex rel.* State of Wisconsin, Plaintiff", asking leave to file an information in the nature of a *quo warranto* to test the right of First Federal to establish the three limited agency offices. After a proper hearing, such leave was granted and the information was filed. Since the proceeding directly challenged the validity of the Regulation under which First Federal established the agencies, 24 C.F.R. 145.15, the Federal Home Loan Bank Board intervened in the action. The facts were stipulated, including the depositions of two witnesses describing the operations carried on at the agencies in question.

Under these facts, Wisconsin moved for summary judgment, having asserted in its information that the Regulation (24 C.F.R. 145.15) "is null and void in that it is beyond the powers delegated to the Home Loan Bank Board by Congress", "is an invalid subdelegation of the powers of the board itself, and hence is not a part of the charter issued to defendant by the United States", and that "the establishment of branch or receiving agencies of savings and loan associations in the state of Wisconsin is prohibited by sec. 215.02(20) of the Statutes of the State of Wisconsin." First Federal and the Board then moved to dismiss the action on the grounds that the court lacked jurisdiction to entertain such an action in *quo warranto*, that the state of Wisconsin had no authority to use the name of the United States in

maintaining such an action, that the state of Wisconsin had not exhausted administrative remedies, and that no claim had been stated upon which relief could have been granted.

The district court assumed, without deciding, that it had jurisdiction to entertain the instant action and, on the merits, found that First Federal had acted lawfully in pursuance of a valid regulation. Accordingly, the court granted the motions for dismissal and denied the motion for summary judgment.

The contested issues are whether the district court has jurisdiction over a *quo warranto* action filed by the state of Wisconsin in the name of the United States to challenge the assertion of corporate authority by a federally chartered corporation after the United States Attorney General had formally declined to file such an information and whether the Regulation of the Federal Home Loan Bank Board, which authorizes federal savings and loan associations to establish limited agencies, is valid.

■ We find ourselves in accord with the district court's well considered opinion on the merits of this case, but the issue of jurisdiction rises to meet us first. As will appear later, we cannot give further consideration to affirmance of the judgment below on the merits if our determination of jurisdiction is adverse to the relator. The question of jurisdiction is basic and fundamental and cannot be ignored. It has been raised by appellees throughout this proceeding. Since we believe its determination is of paramount necessity here we shall give it first consideration.

The district court said, [151 F.Supp. 691] on the issue of jurisdiction:

"* * * being of the opinion that the relator * * * had made a showing that a substantial issue existed, ordered that it be granted leave to file its information in the nature of *quo warranto* * * *."

"The assertion of the right of the State of Wisconsin or any person to bring an action in the nature of *quo warranto* without the consent of the Attorney General of the United States *raises a substantial question.* This court is inclined however, to the opinion that if the defendant Association in asserting the right to maintain agencies is asserting and usurping a prerogative and franchise not conferred upon it by its charter and is invading the sovereign prerogatives of the United States by whom the charter was granted, the sovereign State of Wisconsin has standing to employ the extraordinary writ of *quo warranto* to test the legality of the Association so to act. We are of the further mind that the State of Wisconsin is not required to seek its remedy by use of the administrative procedure under the Act nor is it required to use less extraordinary remedies before resorting to *quo warranto*. *We assume these procedural points,* however, *and do not decide them,* since our decision does not turn upon them." (our emphasis).

■ The modern information in the nature of a *quo warranto* is an extraordinary remedy and has been defined "as an information, criminal in form, presented to a court of competent jurisdiction, by the public prosecutor, for the purpose of correcting the usurpation, mis-user, or non-user, of a public office or corporate franchise * * * and while still retaining its criminal form, it has long since come to be regarded as in substance, a civil proceeding, instituted by the public prosecutor, upon the relation of private citizens, for the determination of purely civil rights." High, Extraordinary Legal Remedies, 2d Ed., p. 458. The origin of the original writ itself is to be found in the earliest history of the common law. The employment of the original writ, its subsequent limitation by statute, its lapse into disuse in England, the usurpation of its

place by the modern remedy of an information and the recognition of the remedy by constitutional and statutory provisions in the various jurisdictions are all the subject of an interesting historical development to be found in Chapter XIII of High's treatise on this subject. It is further pointed out that jurisdiction in this country is generally fixed by the constitutions and statutes of the several states. "Since the remedy by *quo warranto*, or information in the nature thereof, *is only employed to test the actual right to an office or franchise, it follows that it can afford no relief for official misconduct and can not be employed to test the legality of the official action of public or corporate officers.*" (Our emphasis.) High, supra, p. 485.

An examination of several of the statutes authorizing the use of this extraordinary remedy reveals that its application is rather broad but specifically limited to the use therein provided. There have been submitted to this court only two instances in which original *quo warranto* jurisdiction has been specifically conferred upon federal district courts. The revised statutes of 1878 vested jurisdiction in these courts of proceedings brought by the United States Attorney for the removal of persons holding office contrary to the Fourteenth Amendment. Rev.Stat., Sections 563(14), 626(14), (1786). This Act was repealed in the Judicial Code of 1911, 36 Stat. 1168. In 1901, Congress specifically authorized the United States District Court for the District of Columbia to issue *quo warranto* in the name of the United States. Act of March 3, 1901, 31 Stat. 1419, Title 16, Section 1601 of the D.C. Code (1940). However, this grant is strictly limited and is confined solely to situations involving franchises and public offices held within the District of Columbia. There is no other specific statutory provision vesting original jurisdiction in the district courts in *quo warranto* actions. In construing this statute, the Court of Appeals for the District of Columbia held that it did not apply where the plaintiff sought relief from alleged misconduct of a corporation and that *quo warranto* was not an appropriate remedy for attempted revocation of the corporate charter of a bar association on the ground of alleged abuse and misuse of its charter. United States ex rel. Robinson v. Bar Association of District of Columbia, 1952, 91 U.S.App.D.C. 5, 197 F.2d 408.

The general jurisdiction of federal district courts is limited and defined strictly by statute. We cannot look beyond Congressional enactments to determine the extent or scope of this jurisdiction. In the absence of specific statutory provision, Wisconsin relies on two sections of Title 28 U.S.C.A. §§ 1345 and 1651(a). Section 1345 provides:

"Except as otherwise provided by Act of Congress the district courts have original jurisdiction of all civil actions, suits or proceedings commenced by the United States or by any agency or officer thereof expressly authorized to sue by Act of Congress."

This suit is not one commenced by the United States or any of its officers or agencies. In fact, the United States Attorney General expressly refused to institute this action. It is admittedly filed by the state of Wisconsin. While technically it is filed in the name of the United States ex rel. State of Wisconsin, it is in effect a suit by the state of Wisconsin, and not a suit by the United States.

Section 1651(a), supra, provides:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

This provision does not enlarge or expand the jurisdiction of the courts but merely confers ancillary jurisdiction where jurisdiction is otherwise granted and already lodged in the court. Covington and Cincinnati Bridge Co. v. Hager, 1906, 203 U.S. 109, 111, 27 S.Ct. 24, 51 L.Ed. 111, and Knapp v. Lake Shore and

Michigan Southern Ry. Co., 1905, 197 U.S. 536, 25 S.Ct. 538, 49 L.Ed. 870. The statute presupposes existing complete jurisdiction and does not contain a new grant of judicial power. In passing upon the meaning and purpose of this section this court has said:

> "[w]hile the section augments the power of the court in cases of existing jurisdiction, it in no wise expands or extends its territorial jurisdiction." Edgerly v. Kennelly, 7 Cir., 1954, 215 F.2d 420, 422.

There are few authorities touching upon the jurisdiction of a district court to entertain an information in the nature of *quo warranto*. "No instance is known of the use of writ of *quo warranto* in a district court of the United States other than the District Court of the District of Columbia." Cyc. of Federal Procedure, 2d Ed., Sec. 7098. The court, in United States v. Malmin, 3 Cir., 1921, 272 F. 785, 790, indicated that *quo warranto* is the proper remedy to try the title of a judge of a court of the United States but did not indicate in what court it could be entertained. In a suit to enjoin defendant city from levying taxes the court noted that the state law provided the exclusive remedy in an action for *quo warranto* and stated, " * * * *the federal courts, * * * have not the right to exercise the quo warranto jurisdiction * * *.*" (our emphasis). Morin v. City of Stuart, 5 Cir., 1940, 111 F.2d 773, 775. Doubt was expressed that federal courts have *quo warranto* jurisdiction, except as specifically authorized by statute in Cleveland Cliffs Iron Co. v. Village of Kinney, 8 Cir., 1919, 262 F. 980, 984, and In re Yancey, 6 Cir., 1886, 28 F. 445, 451.

■■ A parallel may be drawn between *quo warranto* and mandamus on this question of jurisdiction of the federal district courts. It has been repeatedly held that mandamus may not issue in the district court unless it is necessary for the exercise of independently conferred jurisdiction. In the case of Marshall v. Crotty, 1 Cir., 1950, 185 F.2d 622, 626, 627, the leading cases are cited to

this effect. The court goes on to point out that in Title 28 U.S.C.A. § 1331, the phrase "all civil actions" does not enlarge the jurisdiction of the district courts to vest in them general original jurisdiction in cases of mandamus.

■■ We hold, except as otherwise specifically provided by statute, that there is no original jurisdiction in the federal district court to entertain an information in the nature of *quo warranto*. This makes it unnecessary for us to pass upon the other questions raised in this appeal. It follows that the district court in this case should have dismissed the action for want of jurisdiction instead of determining it upon the merits. The judgment dismissing the action is therefore modified so as to show that the case was dismissed for want of jurisdiction, and, as thus modified the judgment is

Affirmed.