**NATIONAL TEMPLE NON–PROFIT CORPORATION, Plaintiff,**

**v.**

**NATIONAL TEMPLE COMMUNITY FEDERAL CREDIT UNION, Defendant.**

**Civ. A. No. 84–1229.**

United States District Court, E.D. Pennsylvania.

Jan. 23, 1985.

Harold R. Berk, Philadelphia, Pa., for plaintiff.

R. David Danziger, Max D. Palitz, Stephen S. Pennington, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this action plaintiff seeks to recover funds which it alleges were wrongfully converted by defendant. These funds were on deposit in a share account plaintiff maintained with defendant. In defense, defendant, while admitting it has withheld the funds deposited by plaintiff, claims its actions were in accordance with the terms of a third-party loan guarantee binding upon plaintiff. Federal jurisdiction is asserted under the Federal Credit Union Act (the "Act"), 12 U.S.C. § 1751–1795i. Presently before me is defendant's motion to dismiss the complaint. This motion is grounded in the assertion that the Act contains no express or implied cause of action for the conduct herein involved. For the reasons that follow, defendant's motion will be granted.

Concededly no private right of action applicable to the facts of this case is expressly authorized by the Act. Therefore, I must determine whether one is implied. In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court articulated a four-part test to determine when an implied private right of action exists under a federal statute. This test requires a court to consider, first, whether the plaintiff is a member of a class for whose especial benefit Congress enacted the statute; second, whether the legislative history of the statute indicates a congressional intent, explicit or implicit, to create or deny a private remedy; third, whether implying a remedy harmonizes with the legislative purpose; and fourth, whether state law has traditionally regulated the area addressed by the federal statute. Cort, 422 U.S. at 78, 95 S.Ct. at 2088.

Since announcement of the four-part Cort test, the Court has narrowed the availability of implied statutory causes of action to those where a congressional intent to create a particular right of action

(the second prong of the Cort test) can be found. See Touche Ross & Co. v. Redington, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). See also Daily Income Fund, Inc. v. Fox, 464 U.S. 523, ——, 104 S.Ct. 831, 839, 78 L.Ed.2d 645 (1984); Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982); Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). Under Touche Ross and its progeny, the Cort analysis shifts more definitely from the desirability of providing remedies to statutory construction, Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979), with the remaining Cort factors serving as statutory interpretive aids to discern congressional intent. See Daily Income Fund, 104 S.Ct. at 839; Touche Ross, 442 U.S. at 568, 99 S.Ct. at 2485.

■ As plaintiff concedes, the legislative history is silent regarding congressional intent to create a private cause of action on behalf of a credit union member dissatisfied with a lien impressed against the member's deposited funds. With the exception of private actions to recover usurious interest charges, my review of the legislative history has uncovered no discussion of any private enforcement rights. While not automatically fatal to an implied right of action, legislative silence on the matter does not favor creation of the right unless the language or structure of the statute, or the circumstances of its enactment, persuade otherwise. See Transamerica, 444 U.S. at 15–16, 23–24, 100 S.Ct. at 245–249; Touche Ross, 442 U.S. at 575–76, 99 S.Ct. at 2488–89. Furthermore, Congress' explicit allowance of a private right of action to recover usurious interest charges weighs against finding an implied right of action in other sections of the Act. See Touche Ross, 442 U.S. at 571–72, 99 S.Ct. at 2486–87.

Turning to a review of the remaining Cort factors, it is apparent that Congress did not intend to create a private cause of action. The Act creates federal credit un-

ions, grants these credit unions certain powers, provides for certain operating requirements, and establishes certain insurance funds. In this respect, the entire legislative scheme is a type of enabling legislation which creates federal credit unions and provides for their internal operations. Nothing indicates the statute was intended to create privately enforceable rights in favor of credit union members or that the Act was intended to benefit members in any way aside from creating federal credit unions as an alternative to other financial institutions. This alternative, it was hoped, would protect workers from being forced to borrow money at usurious interest rates. *See Barany v. Buller*, 670 F.2d 726 (7th Cir.1982). Indeed, the only private cause of action expressly contained in the Act is to enable credit union members to recover usurious interest charges.

▮ In a similar vein, nothing suggests creation of a private cause of action would harmonize with the legislative purpose in passing the statute. This statute was intended to create credit unions and its amendments were intended to broaden the powers of these associations. S.Rep. No. 814 (1959), *reprinted in* 1959 U.S.Code Cong. & Ad.News 2784, 2784–85. More generally, this statute sought to achieve both thrift among credit union members, and an increase in the availability of loans. *Id.* While not at odds with this purpose, the private cause of action plaintiff desires would not further this legislative scheme.

Focusing more directly on plaintiff's assertion that section 1757(11) of the Act creates rights in favor of credit union members, I note that section 1757(11) simply allows a credit union to collect debts due from its members by way of enforcement of liens. Because federal credit unions are creatures created by federal statute, these institutions would most likely lack the authority to create and enforce liens absent § 1757(11). However, nothing indicates Congress was concerned with the mechanics of establishing a legally enforceable lien nor how to foreclose upon it. Similarly, there is no suggestion that Congress intended to dictate the manner in which mem-

bers could challenge a lien foreclosure. For example, in Pennsylvania where automobile titles are required to be registered with the State Department of Transportation, Congress could not have intended to interfere with the well-established state procedure for recording encumbrances on the title. The same could be said for liens which take the form of a mortgage on real property. Simply stated, Congress has authorized an institution created by it, credit unions, to participate in each individual state's system for securing debts through the creation of liens. This type of interplay between federal statutory enactments and state common law is at the core of our legal system. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart and Wechsler's Federal Courts and the Federal System*, 470–71 (2d ed. 1973).

▮ For all the above reasons, I conclude Congress did not intend to create a private cause of action like that advocated by plaintiff. This view is buttressed by the holdings of other courts which have addressed the issue. For example, in *Barany v. Buller*, 670 F.2d 726 (7th Cir.1982), it was held that no private cause of action existed in favor of credit union members who alleged they were wrongfully removed from the credit union's credit committee. Similarly, *Heiskala v. Johnson Space Center Federal Credit Union*, 474 F.Supp. 448 (S.D.Tex. 1979), held the Act did not provide for a private cause of action to redress the wrongful discharge of credit union employees. In so holding, the *Heiskala* court even noted that none of the *Cort* factors indicated that a private cause of action should be implied. *Id.* at 454.

If I find, as I have, that no federal statutory cause of action exists, plaintiff urges that I follow the analysis used in *Barany v. Buller*, 670 F.2d 726 (7th Cir.1982), and find a cause of action as a matter of federal common law. Initially, I note my agreement with *Barany* in its observation that Congress has not expressly given the courts power to develop federal common

law in this area. *See Barany*, 670 F.2d at 731. Accordingly, like the *Barany* court, I am called upon to decide if national uniformity or some other uniquely federal interest necessitates application of federal common law to the facts at bar. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). Unlike *Barany*, however, I find no uniquely federal interest is implicated by the conduct complained of in this case.

The major distinguishing characteristic between this case and *Barany* is that *Barany* involved the internal administration of federal credit unions. Specifically, it was concerned with what procedures, if any, were required to remove from office members of the credit union's credit committee. Because the Act was intended to establish federal credit unions, a compelling argument can be made for national uniformity in the appointment, and conversely in the removal, of credit union officers.

■ In this case, however, the internal operating procedures of the credit union are not at issue. Here, the dispute involves first, whether an enforceable lien was created by the document defendant characterizes as a third party loan agreement, and second, assuming the first question is answered in the affirmative, what are the rights and duties of the parties to the agreement. Stated briefly, the dispute concerns the contractual rights of a federally chartered institution and that institution's members. Such disputes are often times regulated by state law. *Cf. United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 16 L.Ed.2d 404 (1966). There is no need for national uniformity, and consequently no authority for me to fashion a federal common law remedy.

For all of the above reasons, I conclude there is no federal subject matter jurisdiction over this case. An appropriate order follows.