**Debra K. MONTFORD, Plaintiff,**

v.

**ROBINS FEDERAL CREDIT UNION, et al., Defendants.**

**Civ. No. 86–288–3–MAC(DF).**

United States District Court, M.D. Georgia, Macon Division.

July 6, 1988.

Joseph W. Popper, Jr. and Richard B. Miller, Sell & Melton, Macon, Ga., for plaintiff.

R. Joneal Lee, Warner Robins, Ga., E. Scott Smith, Ford & Harrison, Atlanta, Ga., for defendants.

FITZPATRICK, District Judge.

Plaintiff Debra K. Montford brought the above-referenced action in the State Court of Houston County, Georgia, following her termination from Defendant Robins Federal Credit Union (Robins or the Credit Union). In her Complaint, Montford asserted claims under the Federal Credit Union Act, 12 U.S.C.A. § 1751, *et seq.* and various provisions of Georgia law. Defendants removed the action to this court by the filing of a Petition and Bond for Removal on September 18, 1986. The matter presently is before the court on Plaintiff's Motion for

Partial Summary Judgment and Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Defendant Robins is a private, non-profit corporation chartered by the National Credit Union Administration (NCUA). At all times relevant to this action, Defendant Moore was the General Manager at Robins, and Defendant Levins was the Assistant Manager of Administration. Defendant Moore was employed under a written contract entered into on behalf of Robins by its board of directors. Defendant Levins reported directly to Moore.

Plaintiff Montford was hired by Moore as an Account Clerk in March of 1973. Montford was employed in various positions at Robins between 1973 and 1982. In the Spring of 1982, Moore transferred Montford from the Teller Department to the Loan Department. After approximately four to six weeks of training, Montford received an official appointment to the position of loan officer from the Credit Union's credit committee. Along with her appointment Montford was given the authority to sign loans.

Even before Montford became a loan officer she had expressed an interest in union representation for Robins' employees. This interest was first brought to light in January of 1981, when Montford contacted a Mr. Seidenfaden with the Retail Clerks Local 1063 in Atlanta. They discussed the possibilities of organizing the employees, but Seidenfaden expressed some concern as to the extent to which Montford could participate in such an effort because of her possible status as a "supervisor" under the National Labor Relations Act (NLRA). At the time Montford first contacted Seidenfaden, she was Assistant Head Teller in the Teller Department.

During the Summer of 1983, after she had become a loan officer, Montford again contacted Seidenfaden. Seidenfaden referred Montford to Mr. Emory Walden, the organizing Director for Local 1063. Montford informed Walden that she was no longer in the Teller Department, that problems at the Credit Union still existed, and

that several Robins' employees were in favor of union representation. Subsequently, Montford began soliciting employee interest in the union, passing out union-representation cards, and arranging and attending meetings between employees and Walden. Montford continued her organization efforts on behalf of the union until October 19, 1983, the day she was terminated from the Credit Union.

During the time Montford was working as a loan officer, certain loan policies were in full force and effect at Robins. One of these policies prohibited loan officers from processing or acting upon loan applications submitted by relatives of the loan officer or members of the loan officer's family. On April 19, 1983, Montford received a loan application from Michael D. Driggers. Driggers was the husband of one of Montford's cousins and the son-in-law of Montford's uncle, Jimmy Sims. Montford approved Driggers' application for a loan in the amount of $6,000.00 to purchase a 1983 Chevrolet pickup truck from Dixie Truck & Parts Company. Montford was aware of Driggers' relationship to her cousin and her uncle at the time she processed the loan.

Between September 20, 1983, and October 12, 1983, Levins and Barbara Marcu, a subordinate of Levins, investigated the circumstances surrounding Montford's April 19th approval of Driggers' loan application. On October 12, 1983, Moore, Levins, and Henry Johnson, the Assistant Manager of Operations at Robins, met and discussed the results of the investigation. At this meeting the three men jointly decided to terminate Montford.

During the afternoon of October 19, 1983, Montford was summoned to a meeting in Robins' board room at which Moore, Levins, and Johnson were present. Montford was presented with a notice which stated that she was being terminated because she had violated certain loan policies of the Credit Union. Montford protested her termination and inquired as to whether she could appeal the termination decision. Moore told Montford she could appeal to the board of directors. After this

brief exchange, Johnson escorted Montford to her desk so that she could get her belongings. Montford claims that while she was crying, she was paraded through the offices of the Credit Union and forced to clean out her desk while an escort stood over her.

On October 25, 1983, Montford requested a meeting with the board of directors. By letter dated November 21, 1983, Montford's request was denied. The November 21st letter stated in part: "Management has the authority to make all decisions regarding employment and it is the policy of this Board not to interfere with those decisions." Deposition of Debra Montford, Vol. I, Defendants' exhibit 15, p. 1.[1]

Montford's termination came one day before a union organization meeting was to be held at the Credit Union. After her termination and the board's refusal to entertain an appeal, Montford filed an unfair labor practice charge with the National Labor Relations Board (NLRB). In her charge Montford alleged that in an effort to discourage membership in labor organizations, the Credit Union had discriminated against her in regard to her termination and in regard to the terms and conditions of her employment.

The NLRB Regional Director issued a complaint on Montford's charge, and on February 14 and 15, 1984, the case was tried before an NLRB Administrative Law Judge (ALJ). Montford was represented by counsel at the NLRB proceeding. On July 20, 1984, the ALJ issued an order in which he found that the Credit Union did not discharge Montford, or otherwise discriminate against her, because of her union activities. Montford sought review of the ALJ's decision before the NLRB. On January 19, 1985, a three-member panel of the NLRB affirmed the ALJ's ruling and adopted his recommended order. Montford did not seek review of the NLRB's decision at the circuit court level.[2]

On May 15, 1985, Montford filed an action in this court alleging violations of the FCUA, tortious interference with employment rights, and bad faith conduct. On April 17, 1985, through new, substituted counsel, Montford moved for voluntary dismissal of her Complaint. By Order dated April 18, 1986, this court dismissed Montford's Complaint without prejudice.

■ On July 25, 1986, Montford filed the present action in the State Court of Houston County, Georgia. Montford's State Court Complaint also asserted violations of the FCUA, and tortious interference with contractual and employment rights. On September 18, 1986, Defendants removed the case to this court asserting federal question jurisdiction. Montford subsequently amended her Complaint adding a fourth count alleging that the individual Defendants tortiously conspired to interfere with her contractual, employment, proprietary and other rights.[3]

---

1. On November 10, 1986, more than three years after Montford had been terminated by the board of directors, the five individuals who comprised the Credit Union's credit committee as it existed on October 19, 1983, approved and ratified the decision of Moore and Johnson to terminate Montford. Each individual signed a document stating that had they been advised of the reasons for Montford's discharge on or before October 19, 1983, they would have approved the termination decision. Deposition of Debra Montford, Vol. III, exhibit 4. In addition, the individuals comprising the current credit committee formally revoked Montford's appointment as a loan officer on November 10, 1986. Deposition of Debra Montford, Vol. IV, Defendants' exhibit B.

2. Under the provisions of the National Labor Relations Act, Montford could have sought review of the NLRB's decision either in the Elev-

enth Circuit Court of Appeals or in the Court of Appeals for the District of Columbia. 29 U.S.C.A. § 160(f) (1973).

3. Defendants raise a statute of limitations defense claiming that the instant action was untimely filed since it was commenced more than two years after the alleged wrongful termination. Defendants argue that under O.C.G.A. § 9–3–22, Montford's action had to be filed before October 19, 1985. This limitations defense, however, is without merit. The Georgia Renewal Statute, O.C.G.A. § 9–2–61, allows a plaintiff who discontinues a controversy commenced within the applicable statute of limitations period to recommence that suit within six months of the dismissal, even if the statute has run during that six-month period. In this action the event Montford complains of occurred on October 19, 1983. She filed her first action in this court on May 15, 1985, within the two-year

## II. DISCUSSION

The crux of Montford's argument in this case is that Moore and Levins, both of whom were in management positions, lacked the authority to terminate her since she had been appointed to the position of loan officer. Montford bases her contention on certain provisions of the Credit Union's bylaws which seem to indicate that the credit committee alone has the authority to remove loan officers. The relevant portion of the bylaws reads as follows:

> Article VIII. Executive Officers, Executive Committee, and Management Staff
>
> Sec. 7. The board [of directors] shall employ, fix the compensation, and prescribe the duties of such employees as may in the discretion of the board be necessary, and have the power to remove such employees, unless it has delegated these powers to the treasurer or manager; *except that neither the board, the treasurer, nor the manager shall have the power or the duty to employ, prescribe the duties of, or remove any loan officer appointed by the Credit Committee* or necessary clerical and auditing assistants employed or utilized by the Supervisory Committee.

Federal Credit Union Bylaws, August, 1970, Art. VIII, § 7 (emphasis added). The above-quoted provision was part of the standard form bylaws promulgated as official regulations by the National Credit Union Administration (NCUA). *See* 12 C.F.R. § 701.2(a)–(d)(1) (1988). In addition, both parties agree that these bylaws were binding on the Defendant Credit Union during the time period relevant to this suit.[4]

### A. *Defendants' Motion for Summary Judgment*

In their Petition for Removal, Defendants claimed that this court has original jurisdiction over the present action pursuant to 28 U.S.C. § 1331 since Montford's Complaint alleges violations of the FCUA. Defendants also urge this court to exercise pendent jurisdiction over any separate, state-law claims raised in the Complaint. In their Motion for Summary Judgment, Defendants' main argument is that all of Montford's claims, both state and federal, are preempted under federal labor law. In support of this argument, Defendants contend that "[t]he single unifying thread running through all of [Montford's] claims is that she was unlawfully discriminated against because of her union activity," that such claims are subject to the primary jurisdiction of the NLRB, and that Montford is therefore prohibited from pursuing her claims in this forum. Defendants' Brief in Support of Their Motion for Summary Judgment, pp. 4–5. The court, however, finds it unnecessary to address Defendants' preemption argument. After a thorough consideration of the arguments of counsel and the relevant case law in this area, the court finds that the FCUA offers no express or implied right of action to Montford, nor is there an appropriate federal common-law remedy available to Montford in this case. Consequently, this court has no jurisdiction to hear this action under 28 U.S.C. § 1331, and the court, in its discretion, dismisses any pendent state law causes of action that have been raised in Montford's Complaint. The reasons supporting the court's findings are discussed more fully below.

### 1. *Availability of a Remedy under the FCUA*

Without specifying which particular section of the FCUA sets forth the basis for her claims, Montford contends that she has either an express or implied private right of action under the FCUA. Montford ar-

---

limitations period. The first action was voluntarily dismissed in April of 1986. Montford then recommenced the action in July of 1986, within the six-month period provided for in the Renewal Statute.

**4.** The FCUA provides that the National Credit Union Administration Board, a three-member Board appointed by the President to manage the National Credit Union Administration, "shall from time to time cause to be prepared ... a form of bylaws, consistent with [the FCUA], which shall be used by Federal credit union incorporators...." 12 U.S.C.A. § 1758 (1980). The standard form bylaws are then adopted as regulations in the Code of Federal Regulations.

gues in the alternative that the remedy she is seeking can be fashioned from federal common law. This court is not persuaded, however, that either the FCUA or federal common law provide an appropriate remedy for Montford under the set of facts involved here.

When considering a claim brought under a federal statute, the court must determine whether the statute provides either an express or implied private right of action. Montford has failed to show this court any language in the FCUA which expressly provides a right of action in federal court for employees who allegedly have been terminated in violation of the standard credit union bylaws. Moreover, the court has searched through the statute on its own and has been unable to find a section providing a private right of action for aggrieved employees challenging a violation of the bylaws. Other courts considering the FCUA likewise have found that the statute does not expressly provide private rights of action. *See Barany v. Buller,* 670 F.2d 726 (7th Cir.1982); *Nat'l Temple Non–Profit Corp. v. Nat'l Temple Community Fed. Credit Union,* 603 F.Supp. 807 (E.D.Pa.1985).

Finding that no express private right of action exists under the Act, the court must discern whether the Act provides an implied private right of action. Although at one time implied private rights of action were analyzed under the four-part test set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court recently has shifted the focus of attention to legislative intent. *See Florida Commercial Banks v. Culverhouse,* 772 F.2d 1513, 1517 (11th Cir.1985). The Supreme Court's recent shift has resulted in a narrowing of the availability of implied statutory causes of action to those situations where Congress intended to create a particular right of action. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). Communicating its desire that congressional intent be the deciding factor in determining whether an implied right of action exists under a federal statute, the Court stated in *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979):

> While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, *e.g., J.I. Case Co. v. Borak* [84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)], what must ultimately be determined is whether Congress intended to create the private remedy asserted, as our recent decisions have made clear. *Touche Ross & Co. v. Redington.*

*Id.* at 15–16, 100 S.Ct. at 245.

Montford has failed to cite the court to any portion of the legislative history of the FCUA which supports a conclusion that Congress intended that a private right of action exist for credit union employees who allegedly have been discharged in violation of the standard form bylaws. In addition, the court has been unable to locate any discussion in the legislative history which would support a finding that an implied right of action exists under the FCUA. Similar to their conclusions concerning express private rights of action under the Act, those courts considering the question also have found that Congress did not intend to create implied private rights of action for aggrieved employees under the FCUA. *See Barany,* 670 F.2d at 730; *Nat. Temple,* 603 F.Supp. at 809; *Heiskala v. Johnson Space Center Fed. Credit Union,* 474 F.Supp. 448, 454 (S.D.Tex.1979). This court likewise finds that no implied private right of action exists under the FCUA to redress the wrong complained of in this case.

The inquiry, however, does not end here. Citing *Barany v. Buller, supra,* Montford argues that an appropriate remedy is available to her under federal common law. The *Barany* case was brought by two former members of a credit union's credit committee who had been removed from their positions by the credit union's board of directors. In addition to removing the two plaintiffs, the board of directors had filled the vacant positions with two

other credit union employees. The plaintiffs in *Barany* contested their removal by the board of directors by relying on section 1761 of the FCUA which gives the supervisory committee, not the board of directors, the authority to remove credit committee members. In essence, the plaintiffs in *Barany* argued that the removal provisions contained in section 1761 were exclusive, divesting the board of directors of any power to remove credit committee members.

The Seventh Circuit Court of Appeals began its discussion in *Barany* by correctly noting that " '[t]here is no federal general common law.' " *Barany*, 670 F.2d at 731, *quoting Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The *Barany* court also recognized that the Supreme Court has authorized the formulation of federal common law in only two instances; first, where "a federal rule of decision is 'necessary to protect uniquely federal interests, *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964),' " and second, where "Congress has given the courts the power to develop substantive law, [*Wheeldin v. Wheeler*, 373 U.S. at 652, 83 S.Ct. 1445," *quoting Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981). The *Barany* court concluded that the credit committee members' claim under the FCUA did not come under that category of federal common law cases in which Congress had conferred upon the courts the power to make substantive law, but rather under that category which involved uniquely federal interests. *Barany*, 670 F.2d at 732–33.

This court notes, however, that a critical distinction exists between the *Barany* case and the case presently before this court. That distinction directly relates to the availability of a federal common law remedy. In *Barany*, the court found that the wrong complained of by the two credit committee members could be redressed in a *quo warranto* proceeding. *Quo warranto* is a remedy that was available at common law to prevent the continued assertion of unlawful authority. *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 502, 53 S.Ct. 721, 729, 77 L.Ed. 1331 (1933). This common law remedy is similar to an injunction in that it is to be used to prevent a continued exercise of authority unlawfully asserted rather than to correct what already has been done under that authority or to vindicate private rights. *Id.; see also Equal Employment Opportunity Comm'n. v. Sears, Roebuck & Co.*, 504 F.Supp. 241, 260 n. 36 (N.D.Ill.1980), *aff'd*, 839 F.2d 302 (7th Cir.1988). The plaintiffs in *Barany* were challenging the power of the board of directors both to remove individuals from the credit committee and to fill the vacant positions. Two factors that are absent in the case before this court were pivotal in the Seventh Circuit's initial decision to grant *quo warranto* relief: first, the possibility that the board of directors would continue to remove credit committee members from their positions when they lacked authority to do so, and second, the reality that two individuals continued to act as credit committee members when they had no right to continue to hold their positions since their appointments had been unlawful.[5]

**5.** In *Barany*, the fact that the board of directors' alleged error in appointing the two new credit committee members had not been corrected, and the possibility that the same error could be made in the future, were important to the initial conclusion that *quo warranto* relief was appropriate. After the Seventh Circuit issued its decision in *Barany*, the case was remanded to the district court. On remand the district court refused to reinstate the plaintiffs to their position on the credit committee. When the case was appealed for a second time, the Seventh Circuit agreed that the plaintiffs should not be reinstated. In coming to this conclusion, the Seventh Circuit noted that those defendants who

had exercised unlawful authority at the time the case began were no longer in office. The court stated in part:

There is no indication on the record that [the former board of directors] still occupy their directorial posts; to the contrary, plaintiffs did not contest defendants' assertion at oral argument that each defendant had been replaced on the Board through subsequent annual elections. Hence, the possibility that plaintiffs, even if reelected, would again be ... discharged by the Board of Directors ... is a wholly speculative one. Accordingly, this

In the instant case, however, there is no continued exercise of unlawful authority. Montford's loan officer appointment was officially revoked by the current credit committee at Robins on November 10, 1986, *see supra,* note 1. The parties do not dispute the fact that the credit committee has the necessary authority and is the proper body to revoke loan officer appointments. Consequently, although Defendants Moore and Levins may have acted outside the scope of authority granted to them under the bylaws in firing Montford, neither these Defendants nor the Credit Union is continuing to exercise the alleged unlawful authority. Because *quo warranto* is available only to prevent the continued exercise of unlawful authority and not to correct what has been done under that authority, the court cannot invoke this unique common law remedy to address the alleged wrongs that have occurred in this case. Moreover, the court has not been pointed to any other common law remedy that would be available to Plaintiff Montford under the circumstances present here.[6]

### 2. *Montford's Other Claims*

■ In addition to her claims under the FCUA, Montford has asserted various pendent claims under state law, including tortious interference with an employment contract and conspiracy to interfere with an employment contract. This court is mindful of the Supreme Court's pronouncement concerning pendent jurisdiction found in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966):

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Since the court has found that Montford has no claim under the FCUA which can be heard in this forum, the court exercises its discretion in dismissing without prejudice any state causes of action Montford may have against these Defendants. To the extent these state claims are actionable, they should be adjudicated in a state forum.[7]

### B. *Other Remedies Available to Montford*

■ In finding that Montford's Complaint does not state a cause of action under the FCUA, this court does not mean to say that Montford is foreclosed from seeking relief through other channels. In the FCUA, Congress established an elaborate administrative system whereby the National Credit Union Administration Board (the Board) may investigate and remedy the alleged violation of any "law, rule, or regulation" by "any director, officer, committee member or employee of an insured credit union." 12 U.S.C.A. § 1786(g)(1). The FCUA empowers the Board to suspend directors, officers, or

---

court is without authority to pass on the merits of such a hypothetical dispute.
*Barany v. Buller,* 707 F.2d 285, 287 (7th Cir. 1983).

In the second *Barany* decision, the court seemed to indicate that the basis upon which *quo warranto* relief was founded was no longer present. Likewise, the alleged unlawful exercise of authority in the case before this court ceased to exist at the time Montford's loan officer appointment was terminated by the credit committee at the Robins Credit Union.

6. Although the court has stated that Defendants Moore and Levins may have acted improperly in terminating Montford, the court does not mean to imply that it finds Moore and Levin did in fact violate the bylaws in regard to the termination. Since the court finds Montford has failed to state a claim under the FCUA, it is unnecessary to make a finding as to whether Moore and Levins violated the credit union bylaws. Such a decision is more properly made by the National Credit Union Administration. *See infra,* section B of this Order.

7. Montford also filed a Motion for Partial Summary Judgment asking the court to find the following: (1) that Defendant Moore lacked the authority to terminate Plaintiff from her employment as a loan officer; (2) that Driggers was not a "relative" within the meaning of the bylaws or loan policies in effect at the Credit Union during 1983; and (3) that Dixie Truck & Parts Company is a "dealer" for purposes of the loan in question. These issues, however, are moot in light of the court's finding that Montford has no federal cause of action under the FCUA. Consequently, the court finds it unnecessary to address the questions presented in Plaintiff's Motion.

committee members pending an administrative investigation of alleged wrongdoing. 12 U.S.C.A. § 1786(g)(4). In addition, any person suspended by the Board under 1786(g)(4) may apply to a United States district court for a stay of that suspension pending the completion of the administrative proceedings. 12 U.S.C.A. § 1786(g)(6).

Congress also gave the Board the power to terminate any officer, director, committee member, or "other person" following an appropriate hearing at which the grounds for such termination have been established. 12 U.S.C.A. § 1786(g)(5). The director, officer, committee member or employee in question must be given notice of the hearing, and may appear at the hearing to present his or her case to the Board. 12 U.S.C.A. § 1786(g)(5). *Id.* The Board must then issue a formal decision within ninety days of the hearing. 12 U.S.C.A. § 1786(j)(1). The Act goes further in providing that any party may obtain review of a Board order "by filing in the court of appeals of the United States for the circuit in which the principal office of the credit union is located, or in the United States Court of Appeals for the District of Columbia Circuit, ... a written petition praying that the order of the Board be modified, terminated, or set aside." 12 U.S.C.A. § 1786(j)(2). In allowing a party who disagrees with a Board order to appeal to a circuit court of appeals, the FCUA closely resembles that portion of the NLRA which allows review of NLRB decisions in the appropriate circuit court.

The extensive remedial scheme established in the FCUA supports the conclusion that Congress intended to give the National Credit Union Administration Board, not federal courts, the authority and power to resolve disputes such as the one presently before this court. When drafting the FCUA, Congress chose not to provide an express private right of action for terminated employees. In doing so, Congress intended that the violation of any law, rule, or regulation be dealt with in the first instance by the Board. The violation of any law, rule, or regulation includes the alleged violation of a credit union's bylaws. The Supreme Court has noted that when a federal statute with an integrated system of remedies fails to provide a certain remedy, federal courts must presume that Congress deliberately omitted the asserted remedy. *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1584, 67 L.Ed.2d 750 (1981). The Court went on to state in *Northwest Airlines* that when such a situation exists, federal courts are not to fashion new remedies that might upset the legislative scheme. *Id.*

The relief that Montford seeks before this court can be given by the National Credit Union Administration Board. Indeed, the Board is the proper body to hear complaints concerning the alleged violation of credit union bylaws. The Board is in a better position to interpret the meaning of its own bylaws, and requiring employees to bring bylaw disputes before the Board will promote uniformity and consistency throughout the national credit union system. If Montford is still dissatisfied following the exhaustion of her administrative remedies, the Act allows her access to the appropriate circuit court of appeals.

In sum, the court finds that the FCUA provides neither an express nor an implied private right of action to employees who wish to challenge an alleged violation of the credit union bylaws. Further, the court finds that although Montford has no federal common law remedy available to her, she may pursue her complaint before the National Credit Union Administration. Finally, the court dismisses any pendent state law claims that have been asserted in this action.

Accordingly, Defendants' Motion for Summary Judgment is hereby GRANTED, and Plaintiff's Motion for Partial Summary Judgment is hereby DENIED.