John HELLER

v.

CACL FEDERAL CREDIT UNION, National Credit Union Administration, and John Doe, et al.

Civ. A. No. 91–2870.

United States District Court, E.D. Pennsylvania.

Oct. 21, 1991.

Richard F. Stevens, Stevens and Johnson, Allentown, Pa., Joel B. Wiener, Wiener and Wiener, Allentown, Pa., for John Heller.

David Zalesne, Asst. U.S. Atty., Philadelphia, Pa., Paul T. Sosnowski, National Credit Union Admin., Washington, D.C., for National Credit Union Admin.

Robert E. Kelly, Duane, Morris and Heckscher, Harrisburg, Pa., for CACL Federal Credit Union.

David E. Shakespeare, Pennsylvania Credit Union League, Harrisburg, Pa., for amicus curiae, Pennsylvania Credit Union League.

## OPINION

CAHN, District Judge.

The defendants in this case, CACL Federal Credit Union ["CACL"] and the National Credit Union Administration ["NCUA"], have moved to dismiss for lack of subject matter jurisdiction,[1] or, in the alternative, for failure to state a claim upon which relief can be granted.[2] For the reasons set forth below, the court finds that it is without subject matter jurisdiction to consider the plaintiff's complaint. The case is therefore dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

### I. *Factual Background*

The defendant CACL is a federally chartered and insured credit union located in Mar–Lin, Pennsylvania. Because it is a federally chartered credit union, CACL is subject to the requirements of the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.* ["the Act"]. The defendant NCUA is the agency empowered to enforce the Act and to make rules for its administration. *See* 12 U.S.C. § 1752(a); 12 U.S.C. § 1766(a). Pursuant to its mandate, the NCUA requires all federal credit unions to maintain fidelity bonds covering, *inter alia*, credit union board members. *See* 12 U.S.C. § 1761(b)(2); 12 U.S.C. § 1766(h); 12 C.F.R. 701.20.

John Heller, the plaintiff in this action, was a duly elected CACL board member. On September 11, 1990, CUMIS Insurance Society informed CACL that it was terminating the plaintiff's bond.[3] Although the plaintiff appealed CUMIS' decision to terminate his bond, the appeal was unavailing. Because the plaintiff was no longer bonded, he was removed from CACL's board on September 15, 1990.

Despite the loss of his bond and his subsequent inability to obtain a substitute bond, the plaintiff decided to run for re-

---

**1.** Even if the defendants had not moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), the court would be under an obligation to inquire, *sua sponte,* into the jurisdictional basis of the claim. *See Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Employers Ins. of Wausau v. Crown Cork & Seal Co.,* 905 F.2d 42, 45 (3d Cir.1990); *Ricketts v. Midwest National Bank,* 874 F.2d 1177, 1181 (7th Cir.1989); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); Fed.R.Civ.P. 12(h)(3).

**2.** Additionally, defendant NCUA moves to dismiss for failure to properly serve the United States. Given the court's disposition of the defendants Rule 12(b)(1) Motion, the court need not consider the sufficiency of the service of process.

**3.** The bond was terminated because of allegations that the plaintiff had diverted credit union monies and that he had improperly hired an auditor who was related to another CACL board member.

election to CACL's board. On April 18, 1991, the day before CACL's elections were to be held, the NCUA issued a temporary cease and desist order pursuant to 12 U.S.C. § 1786(f)(1). The order, in effect, prevented CACL from seating the plaintiff as a board member unless and until he could be bonded.

Even though the plaintiff had been unable to secure a fidelity bond, he was elected to the board as a write in candidate. After his election, the remaining CACL board members refused to seat the plaintiff, citing the NCUA cease and desist order. On May 6, 1991, the plaintiff filed this suit, claiming that 1) the cease and desist order of April 18, 1991 is invalid; 2) the cease and desist order was issued in retaliation for the plaintiff's opposition to certain NCUA policies; 3) the NCUA requirements that credit union board members be bonded are invalid; and 4) that the plaintiff should be seated as a CACL board member.

## II. Standards for Dismissal Pursuant to Fed.R.Civ.P. 12(b)(1)

■ Since federal courts are courts of limited jurisdiction, *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433, 109 S.Ct. 683, 687, 102 L.Ed.2d 818 (1989); *Bender v. Williamsport Area School District*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173–76, 2 L.Ed. 60 (1803); *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir.1990), the plaintiff in any action bears the burden of proving that federal jurisdiction is proper. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). Although the standard for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) is similar to the standard for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), *see Mortensen*, 549 F.2d at 890; *Rannels v. Hargrove*, 731 F.Supp. 1214, 1216 (E.D.Pa.1990), there is one critical difference. When a defendant argues that the court cannot have subject matter jurisdiction over the claim (as opposed to arguing that the claim, as pleaded, does not set forth a basis for federal jurisdiction), the court is not required to accept the allegations of the plaintiff's complaint as true. Instead, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. *See also Haase v. Sessions*, 835 F.2d 902, 908 (D.C.Cir.1987).[4]

## III. The Absence of a Private Right of Action

■ In his complaint, the plaintiff claims that jurisdiction over this case is proper pursuant to 12 U.S.C. § 1786. *See* Complaint ¶ 2.[5] This claim must fail because 12 U.S.C. § 1786 does not create a private right of action. 12 U.S.C. § 1786 provides, in the relevant part, as follows:

Within ten days after the credit union concerned or any institution-affiliated party has been served with a temporary cease-and-desist order, the credit union or such party may apply to the United States district court for the judicial district in which the home office of the credit union is located, or the United States District Court for the District of Columbia, for an injunction setting aside, limiting, or suspending the enforcement, operation, or effectiveness of such order pending the completion of the administrative proceedings pursuant to the notice of charges served upon the credit union or such party under paragraph (1) of

---

**4.** It is because of this critical difference in the standards for dismissing pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6) that appellate courts have requested that trial courts clearly state the basis for the dismissal of a claim. *See Kehr*, 926 F.2d at 1409; *Mortensen*, 549 F.2d at 890.

**5.** A claim of federal jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question jurisdiction) would collapse into an inquiry as to whether jurisdiction is proper pursuant to 12 U.S.C. § 1786. This is because 12 U.S.C. § 1786 is the only relevant federal law. *See Montford v. Robins Federal Credit Union*, 691 F.Supp. 347, 351 (M.D.Ga.1988).

subsection (e) of this section, and such court shall have jurisdiction to issue such injunction.

12 U.S.C. § 1786(f)(2). Since the statute clearly states that a suit to set aside a cease and desist order issued by the NCUA may only be brought by a credit union or the institutional affiliate of a credit union, *see In re Conservatorship of United Independent Federal Credit Union, Charter Number 01603,* 768 F.Supp. 42, 45 (E.D.N.Y.1991), a private citizen, such as the plaintiff in this case, may bring suit only if a private right of action is implied under the statute.

The inquiry into whether a private right of action should be implied under a statute which does not expressly provide such a right is governed by the four factors set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In that case, the Court stated that

> [i]n determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (emphasis in original) (citations omitted).

Later Supreme Court cases have made it clear that the determinative *Cort* factor is the second one—the intent of Congress. *See Transamerica Mortgage Advisors Inc. v. Lewis,* 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). If Congress did not intend to create a private right of action, courts will not create one either. The fact that 12 U.S.C. § 1786(f)(2) expressly creates a right of action in favor of credit unions, but does not extend that right to members of credit unions, is evidence of a congressional intent to limit the availability of the cause of action created by 12 U.S.C. § 1786.

Perhaps this is why every court which has considered this question has determined that there is no express or implied private right of action under 12 U.S.C. § 1786. *See Ridenour v. Andrews Federal Credit Union,* 897 F.2d 715, 720–21 (4th Cir.1990); *Barany v. Buller,* 670 F.2d 726, 730–31 (7th Cir.1982); *Rosenberg v. AT & T Employees Federal Credit Union,* 726 F.Supp. 573, 577 (D.N.J.1989); *Montford v. Robins Federal Credit Union,* 691 F.Supp. 347, 351 (M.D.Ga.1988); *National Temple Non–Profit Corp. v. National Temple Community Federal Credit Union,* 603 F.Supp. 807, 808–09 (E.D.Pa.1985); *Heiskala v. Johnson Space Center Credit Union,* 474 F.Supp. 448, 454 (S.D.Tex.1979). The court sees no reason to depart from these precedents in this case.

IV. *The Ten Day Requirement of 12 U.S.C. § 1786(f)(2)*

Even if a private right of action were available under 12 U.S.C. § 1786, the plaintiff would not be entitled to assert it in this case. 12 U.S.C. § 1786(f)(2) provides that actions must be filed within ten days of the time the credit union has been served with a cease and desist order. CACL was served with the order on April 18, 1991. The plaintiff did not file suit until May 6, 1991, eighteen days later. Even assuming that Congress intended to apply the rules set forth in Fed.R.Civ.P. 6(a), and not include weekends in the ten day period set forth in 12 U.S.C. § 1786(f)(2), a total of twelve days elapsed between the service of the cease and desist order and the filing of the complaint. For this reason, the remedy provided by 12 U.S.C. § 1786 is foreclosed in this particular case.[6]

---

6. The failure to file within the ten day period would also preclude relief if the plaintiff were

## V. Quo Warranto

■ Two courts have allowed plaintiffs to seek quo warranto[7] relief even though relief is not provided by 12 U.S.C. § 1786. *See Barany,* 670 F.2d at 735; *Rosenberg,* 726 F.Supp. at 579 (following *Barany* ). *Barany* has, however, been criticized. *See Ridenour,* 897 F.2d at 721; *National Temple,* 603 F.Supp. at 810. Since *Barany* is of questionable precedential value, the court declines to follow it. Instead, the court will inquire into whether jurisdiction over a quo warranto claim is proper.[8] If the court is without jurisdiction, a quo warranto claim must be dismissed. *See* 65 Am.Jur.2d *Quo Warranto* § 101.

■ Federal courts do not have original jurisdiction over quo warranto proceedings. *See United States v. First Federal Savings and Loan Ass'n,* 248 F.2d 804, 808–09 (7th Cir.1957), *cert. denied,* 355 U.S. 957, 78 S.Ct. 543 (1958); 32 Am.Jur.2d *Federal Practice and Procedure* § 266.[9]

While a federal court can exercise supplemental jurisdiction over state law claims where the claims arise out of the same case or controversy as the federal claim which is before the court, *see* 28 U.S.C. § 1367 (codifying supplemental jurisdiction), the court should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Weaver v. Marine Bank,* 683 F.2d 744, 746 (3d Cir.1982); *Stephenson v. Veterans Administration, et al.,* No. 91–3724 Slip op. at 19, 1991 WL 208898 (E.D.Pa. October 8, 1991); 28 U.S.C. § 1367(c)(3). Since the plaintiff's federal claims must be dismissed for want of jurisdiction, the court will not entertain state law quo warranto claims. Although this court will not consider a quo warranto claim in this case, the plaintiff is not precluded from asserting his claim in a state court, if he so desires.[10]

---

able to avail himself of 12 U.S.C. § 1786(g)(6) (relating to NCUA suspension orders). Since the NCUA issued a cease and desist order in this case, rather than a suspension order, 12 U.S.C. § 1786(f)(2), rather than 12 U.S.C. § 1786(g)(6), controls.

**7.** Quo warranto is an ancient writ used by the King of England to determine if an individual's claim to an office or franchise is well founded. If the individual is found to be in unlawful possession of the office, the individual is ousted. *See United States v. First Federal Savings and Loan Ass'n,* 248 F.2d 804, 807–08 (7th Cir.1957), *cert. denied,* 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 533 (1958); 65 Am.Jur.2d *Quo Warranto* §§ 1–2; 74 C.J.S. *Quo Warranto* § 1. In this way, quo warranto resembles an action for ejectment (with the King seeking to eject the wrongful office holder). *See Andrade v. Lauer,* 729 F.2d 1475, 1498 (D.C.Cir.1984).

**8.** Regardless of whether jurisdiction is proper, it does not appear that quo warranto affords this plaintiff relief. In this action the plaintiff does not seek to oust someone from wrongful possession of a seat on CACL's board of directors. The seat the plaintiff claims has remained vacant since the election. The plaintiff seeks a court order forcing CACL's existing directors to seat him. Quo warranto cannot be used to force the rightful possessor of an office to *do* anything. *See United States v. First Federal Savings and Loan Ass'n,* 248 F.2d 804, 808 (7th Cir.1957), *cert. denied,* 355 U.S. 957, 78 S.Ct. 543

(1958); *Montford,* 691 F.Supp. at 354; *E.E.O.C. v. Sears, Roebuck & Co.,* 504 F.Supp. 241, 260 n. 36 (N.D.Ill.1980); 65 Am.Jur.2d *Quo Warranto* § 15; 74 C.J.S. *Quo Warranto* § 11. For this reason the court would be forced to dismiss a quo warranto claim pursuant to Fed.R.Civ.P. 12(b)(6) if such a claim were properly before the court.

**9.** It appears that the *Barany* and *Rosenberg* courts asserted jurisdiction over quo warranto claims because they found, on the facts before them, that there were sufficient "uniquely federal interests" to merit the creation of a federal common law remedy. These courts are the only federal courts outside of the District of Columbia (where there is a federal statute which provides federal courts with jurisdiction over quo warranto proceedings seeking to oust individuals from possession of offices within the District) to create such a remedy. There are no uniquely federal interests in this case, save for the federal interest in having the orders of the NCUA upheld. Congress addressed this interest when it promulgated 12 U.S.C. § 1786. As it has been discussed *supra,* Congress did not intend private citizens to be able to challenge NCUA orders. This court declines to create common law which would circumvent congressional intent.

**10.** A dismissal pursuant to Fed.R.Civ.P. 12(b)(1) does not reach the merits of the case, and therefore does not have any res judicata or collateral estoppel effect. *See Ricketts v. Midwest National Bank,* 874 F.2d 1177, 1182 n. 4 (7th Cir.1989);

## VI. Conclusion

For the foregoing reasons the court is without subject matter jurisdiction to consider the plaintiff's claims.[11] The complaint is therefore dismissed.

*Haase,* 835 F.2d at 906; *Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Mortensen,* 549 F.2d at 891.

11. It is for this reason that the court has not addressed the plaintiff's claim that the NCUA's regulations requiring credit union board members to be bonded are invalid. The court must note, however, that an agency's interpretation of the statute it has been created to implement is entitled to substantial deference. *See Rust v. Sullivan,* —— U.S. ——, ——, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233, 249 (1991); *E.E.O.C. v. Commercial Office Products Co.,* 486 U.S. 107, 115–16, 108 S.Ct. 1666, 1671–72, 100 L.Ed.2d 96 (1988); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *LTV Federal Credit Union v. UMIC Government Securities, Inc.,* 523 F.Supp. 819, 826 (N.D.Tex.1981), *aff'd,* 704 F.2d 199 (5th Cir.), *cert. denied,* 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983) (showing deference to NCUA's interpretation of 12 U.S.C. § 1751, *et seq.*). For this reason the plaintiff would have, at best, a difficult time prevailing on the merits of his case.