**Leonard F. ROSENBERG, Plaintiff,**

v.

**AT & T EMPLOYEES FEDERAL CREDIT UNION, Defendant.**

Civ. A. No. 89–2318.

United States District Court, D. New Jersey.

Dec. 5, 1989.

---

Leonard F. Rosenberg, Livingston, N.J., pro se.

Phil H. Leone, McKenna, Liska & Leone, Red Bank, N.J., for defendant.

## OPINION

DEBEVOISE, District Judge.

### NATURE OF ACTION

This is an action by *pro se* plaintiff, Leonard F. Rosenberg, against the AT & T Employees Federal Credit Union ("Credit Union"). Plaintiff alleges that defendant's Board of Directors was elected in violation of the Credit Union's bylaws, and that the board also violated the bylaws and the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.* in preventing plaintiff from running for a position on the Board. Plaintiff moves presently for summary judgment. In response, defendant claims that the court lacks subject matter jurisdiction to hear this case.

### FACTS

Plaintiff is a resident of New Jersey and a member of the defendant credit union. The defendant is a federal credit union established in accordance with the requirements of the Federal Credit Union Act ("the Act"), 12 U.S.C. § 1751, *et seq.*, with offices in New Providence, New Jersey. Defendant draws its approximately 45,000 members from employees of certain divisions of the AT & T Corporation. Most of its members are located in New Jersey.

The present controversy involves plaintiff's attempt to be elected to defendant's Board of Directors. Defendant's bylaws provide for an election of Board members to be held each year at the credit union's annual meeting. In 1989, one director's term was scheduled to expire, leaving a vacancy to be filled by election at the annual meeting. On April 12, 1989, defendant announced by mail to all of its members that the credit union's annual meeting would be held on Saturday, May 27, 1989. That notice allegedly did not mention that an election would be held, nor did it discuss the opportunity for members to run for the Board vacancy.

Apparently, some time after notice of the annual meeting was mailed, the Nominating Committee of defendant's Board of Directors nominated Claire E. Mansfield to fill the vacancy. On May 4, 1989, after Mansfield was nominated, plaintiff claims that he had a conversation with Joan Thuebel, a member of the Board and Vice Chairperson of the Nominating Committee, who

told plaintiff that there was one vacancy on the Board, for which there would be an election on May 27, 1989. On that same date, plaintiff sent defendant his nominating petition, which contained the required number of signatures for nominating plaintiff as a candidate for the Board. Defendant acknowledged receipt of plaintiff's petition on May 9, 1989.

Subsequent to receiving plaintiff's nomination, another Board member decided to resign, leaving two vacancies on defendant's Board. Under the defendant's bylaws, the board is permitted to reduce the number of directors:

> [t]o an odd number not fewer than 5 nor more than 15 by resolution of the board. No reduction in the number of directors may be made unless corresponding vacancies exist as a result of deaths, resignations, expiration of terms of office, or other actions provided by these bylaws.

(Article VII. Board of Directors, section 1). Relying on this provision, the Board decided to reduce its number from 11 to 9 directors, obviating the need for an election and thwarting plaintiff's candidacy. According to defendant, the Board made this reduction because it determined that an 11 member board was "unwieldy." According to plaintiff, the reduction was made in bad faith to prevent plaintiff from obtaining a Board position and to cover up the Board's failure to adhere to the election procedures of the bylaws prior to the resignation of one of its members. To support this claim, plaintiff alleges that he was told by Ms. Thuebel on May 19, 1989 that the election would be postponed. On May 22, 1989, the Chairman of the Board, Donald Lynch, allegedly told plaintiff that the elections were cancelled "simply because [plaintiff's nominating] petition was presented to us." (Plaintiff's Aff. at par. 7). According to plaintiff, two days later, Lynch told him of the reduction in the number of Board positions.

Plaintiff objects to the procedures employed by the Board prior to its decision to reduce the number of its members. In particular, plaintiff alleges that despite nominating Mansfield to fill a Board vacancy, the Board never notified credit union members of the vacancy and the accompanying opportunity for any member to run for the open position. Article VI, section 1 of defendant's bylaws provides:

> [t]he Secretary shall, at least seventy-five (75) days prior to the annual meeting, notify in writing all members eligible to vote that nominations for vacancies may also be made by petition signed by one percent of the members with a minimum of twenty (20) and a maximum of five hundred (500).

Plaintiff claims that these provisions were violated not only prior to the originally scheduled May, 1989 election, but also prior to each election of the existing board members. On this basis, plaintiff claims that all of the Board's members must be removed from office, since none of them were elected in accordance with election procedures required under the bylaws. Plaintiff also alleges that the Board has engaged in a consistent practice of perfunctorily approving candidates for positions on the Board of Directors chosen by the Board's Nominating Committee, without giving proper notice to the credit union's membership.

Defendant disputes plaintiff's claims through the affidavit of its Chairman of the Board, in which he makes the following general statement:

> I have been on the Board of Directors of AT & T Employees Federal Credit Union for more than (4) years and I dispute all allegations the plaintiff makes concerning the alleged improprieties with regard to past elections held by the credit union. I can state that for all the years I have been associated with the Board and its members, we have always followed the credit union by-laws and attempted to run the affairs of the credit union to the best of our ability.

(D.M. Lynch Aff., August 3, 1989, at par. 6). The Chairman of the Board recently submitted a supplemental affidavit which contradicts some of plaintiff's specific allegations. For instance, the Chairman states that it is his belief that "all members currently holding positions on the Board were validly nominated and elected to the Board

in accordance with proper procedures as outlined by our bylaws." (D.M. Lynch Aff., September 11, 1989, at par. 3).

## DISCUSSION

A. *Standards for Summary Judgment*

Summary judgment is only appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *rev'g.* 723 F.2d 238 (3d Cir.1983). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Building Co. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). The Supreme Court has explained that in evaluating the evidence presented, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. 574, 106 S.Ct. 1348. All evidence must be viewed in a light most favorable to the party opposing the motion. *Wahl v. Rexnord*, 624 F.2d 1169, 1181 (3d Cir.1980). When ruling on a motion for summary judgment the court must also consider the relevant burdens of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In an effort to defeat plaintiff's motion for summary judgment, defendant argues that the court lacks subject matter jurisdiction to hear plaintiff's claims. Since there is no diversity of citizenship between the parties, plaintiff appears to rely primarily on 28 U.S.C. § 1331 as the basis for federal jurisdiction. Section 1331 provides:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Thus, the issue is whether plaintiff's claims arise under federal law. Claims are deemed to arise under federal law if the resolution of a federal question necessarily plays a significant role in the proceedings. *Staacke v. Secretary of Labor*, 841 F.2d 278 (9th Cir.).

■ Plaintiff argues that he has a valid federal cause of action under the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.* Plaintiff concedes that legal authorities do not clearly address the issue of a federal district court's jurisdiction over the claims asserted in this case. However, he argues that an express private right of action for the claims alleged here can be found in various provisions of the Act. For instance, plaintiff notes that section 206(g)(6) of the Act, 12 U.S.C. § 1786(g)(6), expressly gives a credit union member the right to bring suit in the United States district court where a member, director, officer of other person has been suspended from participating in the affairs of a federal credit union.[1]

Section 206 and the other provisions of the Act cited by plaintiff, do not support his claim that he has an express cause of action. Those provisions deal with instances involving the National Credit Union Administration Board's removal of or action against a director, officer, committee member, or other person participating in the

---

1. Section 206(g)(6) provides in part:

    Within ten days after any director, officer, committee member, or other person has been suspended from office and/or prohibited from participation in the conduct of the affairs of an insured credit union under paragraph (4) of this subsection, such director,

officer, committee member, or other person may apply to the United States district court for the judicial district in which the principal office of the credit union is located ... and such court shall have jurisdiction to stay such suspension and/or prohibition.

affairs of the credit union.[2] They do not deal with actions by a particular credit union's board of directors, nor do they deal with a credit union member's attempt to remove directors in the absence of action by the Administration Board. Similarly, those provisions do not create a cause of action for the breach of credit union bylaws or for the breach of fiduciary duties by a member of the credit union's board of directors. Therefore, plaintiff cannot rely on such provisions as evidence that he has an express cause of action for his claims. However, the inquiry does not end here.

### B. *Implied Cause of Action*

Plaintiff suggests that he has an implied cause of action under the Act, which entitles him to sue in federal court for the relief he seeks presently. In order to determine whether the Act contains an implied cause of action, the criteria set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and its progeny must be applied.

Under *Cort* there are four factors which must be considered. They recently have been described by the Court of Appeals as follows:

> (1) whether the plaintiff is in the class for whose especial benefit the statute was enacted; (2) whether there is any indication that Congress intended to imply a remedy; (3) whether a remedy is consistent with the purposes underlying the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law.

*Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1055 (3d Cir.1989) (*citing Cort v. Ash* ). In *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981), the Supreme Court held that the central inquiry under the *Cort* analysis is whether Congress intended to create a cause of action. Thus, the focus in this case should be primarily on Congress' intent in drafting the Federal Credit Union Act.

There is nothing in the Federal Credit Union Act itself or in its legislative history which reveals Congress' intent to create a private cause of action where a federal credit union's board of directors fails to adhere to the credit union's bylaws, or otherwise breaches its duty to the credit union's members. Section 108 of the Act, 12 U.S.C. § 1758, provides that a credit union "shall ... cause to be prepared a form of organization certificate and a form of bylaws, consistent with this chapter ..." The accompanying federal regulations establish standard bylaws which a credit union must adopt. 12 C.F.R. sec. 701.3 and sec. 701.14(e) and (f). However, nothing in these provisions authorizes or anticipates a private cause of action for a breach of those bylaws. The legislative history is similarly silent in this regard. For these reasons, plaintiff's claim of an implied cause of action must fail. However, plaintiff's position is not necessarily doomed by the lack of an implied cause of action.

### C. *Federal Common Law*

[4] A finding that the Act does not contain an implied right of action does not preclude the existence of a federal common law cause of action. *Plucinski v. I.A.M. National Pension Fund,* 875 F.2d 1052, 1056 (3d Cir.1989). The *Plucinski* court adopted Chief Judge Shwartz's observation,

> [T]he result of *Cort v. Ash* analysis ... [is] not that Congress intended to forbid this cause of action, but only that there is insufficient evidence that Congress intended to provide a remedy.

---

**2.** Somewhat puzzlingly, defendant argues that section 206 deals with "administrative action taken by a Board of Directors of a credit union." Defendant argues further that such administrative action is not involved in plaintiff's claims. However, defendant's interpretation of the Act is not only adverse to defendant's position in this case, but it is also incorrect. Section 206 continually refers to actions of "the Board," not of the board of directors. More importantly, section 101 of the Act, 12 U.S.C. § 1752, defines "the Board" as the "National Credit Union Administration Board." It is obvious that the references to "the Board" in section 206 refer to the administrative body which regulates federal credit unions throughout the nation, rather than to a particular credit union's board of directors.

*Id.* (*citing Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund,* 618 F.Supp. 943, 951 (D.Del.1985), *rev'd in part on other grounds,* 850 F.2d 1028 (3d Cir.1988)).

The Court of Appeals for the Seventh Circuit appears to be the only federal appellate court to have considered directly whether Congress authorized the formation of federal common law under the Federal Credit Union Act. *See Barany v. Buller,* 670 F.2d 726 (7th Cir.1982). In *Barany,* the Seventh Circuit held that there was a federal common law cause of action for *quo warranto* relief under the Act. *But cf. Boyster v. Roden,* 628 F.2d 1121 (8th Cir.1980) (holding that there is no federal common law cause of action, for breach of fiduciary duty under the Farm Credit Act, 12 U.S.C. § 2071, *et seq.*). The plaintiffs in *Barany* were two former members of a credit union's credit committee, who were ousted from office after they reported the improper conduct by another member of the committee. They brought an action in federal court to redress their removal from the committee. After applying the *Cort v. Ash* criteria, the *Barany* court held that plaintiffs had no implied cause of action. However, the court proceeded to find a federal common law cause of action noting:

> Very importantly, the history of the Act reveals that the uniform administration of federal credit unions, which can be achieved only by application of federal law, was of paramount importance to Congress when it enacted the Federal Credit Union Act.

*Barany,* 670 F.2d at 731.

The *Barany* court further noted that federal common law is limited to two instances:

> those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964), and those in which Congress has given the courts power to develop substantive law, [*Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963)].

*Barany,* 670 F.2d at 731 (*citing Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981)).

As in *Barany,* this case involves the first of these two instances. Here, plaintiff seeks to protect uniquely federal interests, in that he seeks to enforce a federal credit union's bylaws which were mandated by the National Credit Union Administration. It is well settled under common law that bylaws generally act as a contract between a corporation and its shareholders. Thus, a breach of a corporation's bylaws gives rise to an action for breach of contract. This rationale seems fully applicable to credit unions, despite the fact that they have features which distinguish them from typical corporations. It also provides the basis for finding a federal common law cause of action for breach of bylaws.

This finding is supported by several considerations. First, the fact that Congress authorized the National Credit Union Administration to promulgate standard bylaws emphasizes Congress' desire for uniformity with respect to the operation of federal credit unions and the rights of their members. This uniformity would likely be frustrated if state laws were to provide the remedy for a breach of bylaws. For example, many states, like New Jersey, have their own statutes governing state chartered credit unions, which differ in some respects from their federal counterparts. *See N.J.S.A.* 17:13–79, *et seq.* In many instances, those statutes appear to supplant state common law with respect to credit unions, making it unclear whether there is any state remedy for a breach of the bylaws. In fact, in this case, defendant does not contend that such a remedy exists. Rather, defendant argues that under New Jersey's Credit Union Act, which defendant contends applies to federal credit unions operating in New Jersey, plaintiff would have to depend on the State Commissioner of Banking to institute suit to vindicate his rights under the bylaws. This kind of dependency on the peculiarities of the laws of the various state is inconsistent with Congress' interest in uniformity when it created the Federal Credit Union Act.

Second, in this case, plaintiff has demonstrated that he does not have a federal administrative remedy for his grievance, suggesting that some other means for effecting uniformity must be available. Plaintiff initially sought to remedy defendant's alleged breach of bylaws by proceeding before the National Credit Union Administration. In a letter dated May 23, 1989, the Administration informed plaintiff that he could not bring such claims before it. That letter states in part:

> Bylaws function as a contract which governs the relationship between the credit union and its members, and disputes over the meaning of its provisions are to be resolved in another forum. The National Credit Union Administration does not become involved in such disputes. It is neither a court of law nor an arbitrator....

(Plaintiff's exhibit 10). It is apparent from the Administration's opinion, that plaintiff cannot look to a federal agency to ensure the uniform effect of a federal credit union's bylaws.

Finally, the rights asserted by plaintiff require the uniformity afforded by an application of federal common law. As noted by the *Barany* court, "[t]he salient feature of credit unions is their democratic control and management ..." *Barany,* 670 F.2d at 734. This feature is ensured by the bylaws' requirements concerning elections and operations of the credit union's board of directors. If enforcement of those requirements depended upon the vagaries of applying the law of fifty different states, the democratic control intended by Congress might be thwarted.

For all of the foregoing reasons, and for the reasons expressed by the Seventh Circuit in *Barany,* I find that there is a federal common law right for breach of bylaws under the Federal Credit Union Act.

### D. *Plaintiff's Motion for Summary Judgment*

■ Having established that plaintiff has a cause of action under federal common law, it is necessary to reach the merits of his summary judgment motion. Plaintiff has submitted various pieces of evidence by way of affidavits and letters which suggest that defendant deviated from the bylaws in electing members to the Board of Directors. However, many of plaintiff's contentions are contradicted by the most recent affidavit of Donald Lynch, defendant's Chairmen. While Lynch's affidavit is not very specific in refuting plaintiff's claims, it is sufficient to create a material issue of fact to defeat plaintiff's motion for summary judgment. It can be assumed that Lynch, as defendant's Chairman, has knowledge of previous elections held by the Board and is familiar with the requirements of the credit union's bylaws. Thus, his statement that previous elections were held in accordance with the standards set forth in those bylaws, creates a disputed factual question as to the validity of those elections. There is also an unresolved issue of fact concerning defendant's motivation for reducing the Board's membership from 11 to 9 directors.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment and defendant's motion to dismiss for lack of subject matter jurisdiction are each denied.