Clifton SMITH, Plaintiff–Appellant,

v.

DEARBORN FINANCIAL SERVICES,
INC., and Dearborn Federal Credit
Union, Defendants–Appellees.

No. 92–1432.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1992.

Decided Jan. 7, 1993.

Robert F. Harrington (argued and briefed), Farmington Hills, MI, for plaintiff-appellant.

Thomas R. Bowen (briefed) Susan L. Brown (argued) Harvey, Kruse, Westen & Milan, Troy, MI, for defendants-appellees.

Before: MARTIN and MILBURN, Circuit Judges; and WELLFORD, Senior Circuit Judge.

MILBURN, Circuit Judge.

Plaintiff Clifton Smith appeals the district court's order finding that the Federal Credit Union Act ("FCUA"), 12 U.S.C. §§ 1751–1795k, provides no private cause of action and dismissing plaintiff's federal claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). On appeal, the sole issue is whether the district court erred in holding that no private right of action exists for the enforcement of the FCUA, under either the statute or the applicable regulations, 12 C.F.R. § 721.2. For the reasons that follow, we affirm.

I.

Defendant Dearborn Federal Credit Union ("DFCU") is a federal credit union subject to the provisions of the FCUA. The National Credit Union Administration ("NCUA") is a federal agency empowered to enforce the FCUA and to make rules for its administration pursuant to 12 U.S.C. § 1752a and § 1766(a). One of the regulations promulgated by the NCUA, 12 C.F.R. § 721.2, regulates the manner in which federal credit unions may sell noncredit and nonshare related insurance, such as family group life insurance, to its members. Specifically, 21 C.F.R. § 721.2(b) provides that a credit union may only sell such insurance to its members at cost and may not retain any compensation beyond its actual cost.

Plaintiff is a DFCU member who purchased family group life insurance from DFCU. Plaintiff is also a licensed insurance agent who, during the time period covered by this action, was under contract with Dearborn Financial Services ("DFS") to provide certain administrative functions. For many years prior to mid–1984, DFCU had a family group life insurance program covering approximately 7,000 members out of the nearly 120,000 members of DFCU. During those years when there was a low life insurance loss payout, DFCU had a policy of returning a portion of the premiums of the group life insurance to the members who had paid the premiums. Rather than making numerous payments of small sums of money to individual members, DFCU generally implemented its policy by placing the returned premiums into a fund and using the fund to purchase one free quarter of life insurance for its members.

In early 1984, DFCU created DFS to act as an "in-house" insurance agency. DFS is a federally chartered credit union services

organization and a wholly-owned subsidiary of DFCU. DFCU planned to institute a new family group life insurance plan with Royal Maccabees Life Insurance Company ("Royal Maccabees") utilizing DFS to administer the plan. Royal Maccabees Life Insurance Company also does business under the name Maccabees Mutual Life Insurance Company.

On September 1, 1984, DFCU became the policyholder of a Family Group Life Insurance Plan issued by Royal Maccabees. The family group life insurance policy is a "cost plus" system by which the insurer annually deducts its administration fees and paid-out claims, as well as its fixed percentage profit from the gross paid-in premiums. After such deductions, the insurer returns any leftover premiums to the holder of the policy by means of a premium refund check to the administrator, DFS. Article XIX of the family group life insurance contract states:

> DIVIDENDS—This Policy may participate in the divisible surplus of the Company. The amount of the divisible surplus as well as the amount and method by which this surplus is apportioned to this Policy will be determined by the Board of Directors of the Company.

J.A. p. 118. Plaintiff asserts that Article XIX gives DFCU members who participate in the family group life insurance contract the right to participate in the return of the premiums or divisible surplus.

DFCU received a return of premiums from Royal Maccabees in 1989 and 1991 due to a low payout during those years. J.A. p. 109. However, defendant DFS retained the surplus premiums rather than return them to DFCU members who had paid premiums for family group life insurance.

On August 29, 1991, plaintiff filed his complaint seeking to enforce the provisions of 12 C.F.R. § 721.2 as a private individual. Plaintiff not only filed his complaint in his individual capacity, but he also sought certification of the action as a class action pursuant to Federal Rule of Civil Procedure 23(b). However, the district court did not rule on plaintiff's motion for class certification prior to the dismissal of the action.

Plaintiff asserted four grounds for relief in his complaint. Count one asserted a federal common law right to recover for the breach of defendant's statutory duties under 12 C.F.R. § 721.2(b)(2). Count two asserted a breach of fiduciary duty under state common law based upon the unlawful retention of the returned premiums by DFS/DFCU. Count three asserted a federal common law claim under the FCUA for inflated administration fees. Count four asserted a state law claim for inflated administration fees.

On March 5, 1992, the district court granted defendants' motion for summary judgment on the ground that no private right of action exists for the enforcement of the FCUA under either the statute or the provisions of 12 C.F.R. § 721.2. The district court also held that it had no basis to create a remedy under federal common law. This timely appeal followed.

## II.

### A.

Plaintiff challenges the district court's dismissal of the federal issues in his complaint for lack of subject matter jurisdiction. Plaintiff acknowledges that there is no express private right of action under the FCUA. Appellant's brief, p. 10; J.A. p. 82. Plaintiff also acknowledges that all of the federal decisions which have dealt with the issue have found that there is no implied private right of action under the FCUA. Appellant's brief, p. 11; J.A. p. 82.

However, plaintiff argues that it is possible that there is an implied private right of action under the regulations promulgated pursuant to the FCUA, specifically 12 C.F.R. § 721.2.[1] Plaintiff asserts that the

---

**1.** § 721.2. Reimbursement.

　(a) For purposes of paragraph (b) of this section, the following definitions shall apply:

　　(1) *Dollar amount* shall mean $4 per single payment policy, $6 per combination policy, or $4 per annum for any other type of policy; and
　　(2) *Cost amount* shall mean the total of the direct and indirect costs to the Federal credit

alleged implied private right of action arises out of 12 C.F.R. § 721.2 due to its specificity as well as the intent of the regulation to protect members of federal credit unions who purchase nonshare related group insurance from being charged premiums greater than the cost to their own credit union. According to plaintiff, 12 C.F.R. § 721.2 demonstrates Congressional intent that a federal credit union which charges members above the cost of nonshare related group insurance may not retain such profits.

 However, federal regulations cannot themselves create a cause of action; that is a function of the legislature. *See Stewart v. Bernstein,* 769 F.2d 1088, 1092–93 n. 6 (5th Cir.1985). A grant of federal rulemaking power is not authority to create federal jurisdiction. That authority lies solely with Congress. *See Marshall v. Gibson's Prods., Inc. of Plano,* 584 F.2d 668, 677–78 and n. 16 (5th Cir.1979). Therefore, no implied private right of action can be found from the regulations standing alone. Rather, the statute must be examined to determine if an implied private right of action can be found from the statute.

As was noted above, plaintiff has acknowledged that all of the federal decisions which have examined whether a private right of action is implied under the FCUA have concluded that no such implied cause of action exists. *See Barany v. Buller,* 670 F.2d 726 (7th Cir.1982); *Ridenour v. Andrews Fed. Credit Union,* 897 F.2d 715 (4th Cir.1990); *Heller v. CACL Fed. Credit Union,* 775 F.Supp. 839 (E.D.Pa.1991); *Rosenberg v. A T & T Employees Fed. Credit Union,* 726 F.Supp. 573 (D.N.J. 1989); and *Montford v. Robins Fed. Credit*

*Union,* 691 F.Supp. 347 (M.D.Ga.1988). According to plaintiff, in all of these decisions which found no implied private right of action, the plaintiffs tried to imply the private right of action from the general enabling provisions of the FCUA. Plaintiff asserts that due to the degree of specificity present in 12 C.F.R. § 721.2, it can serve as the basis for an implied private right of action as compared to the general enabling provisions of the FCUA.

Plaintiff's argument is somewhat disingenuous, however, since it gives the impression that the arguments in favor of an implied private cause of action under the FCUA, which were rejected in the cases listed above, were based only on generalized, nonspecific provisions of the FCUA. For instance, the claim of the plaintiffs in *Barany* was based on the removal provision of 12 U.S.C. § 1761d. Likewise, the claims of the plaintiff in *Ridenour* were based upon his alleged rights as a credit union member under 12 U.S.C. §§ 1760, 1761, and 1761b. Similarly, the plaintiff in *Rosenberg* predicated his claims on 12 U.S.C. § 1786(g)(6), and the plaintiff in *Heller* based his claims on the requirements of 12 U.S.C. §§ 1761(b)(2), 1766(h), and 1786(f)(1). Only in *Montford* did the plaintiff present a generalized claim that an implied private right of action existed under the FCUA. Thus, plaintiff's claim that an implied private right of action is created under 12 C.F.R. § 721.2 by virtue of the specificity of the regulations is misplaced.

In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth the following factors to determine if a private right of action is implicit in a federal statute that does not expressly provide for one:

union of any administrative functions performed on behalf of the vendor. The Federal credit union must be able to justify this amount using standard accounting procedures.

(b) A Federal credit union may be reimbursed or compensated by a vendor for activities performed under § 721.1 as follows:

(1) Except as otherwise provided by applicable state insurance law, reimbursement or compensation is not limited with respect to insurance sales by the credit union or its employees which are directly related to an extension of credit by the credit union or directly related to the opening or maintenance of a share, share draft or share certificate account at the credit union;

(2) For insurance sales other than those described in paragraph (b)(1), a Federal credit union may receive an amount not exceeding the greater of the dollar amount or the cost amount;

(3) For group purchasing plans other than insurance, a Federal credit union may receive an amount not exceeding the cost amount.

(1) is the plaintiff one of the class for whose special benefit the statute was enacted—e.g., does the statute create a federal right in favor of the plaintiff?

(2) is there any explicit or implicit indication of legislative intent to either create or deny such a private right of action?

(3) is it consistent with the underlying purposes of the legislative scheme to imply a private right of action for the plaintiff?

(4) is the cause of action one traditionally relegated to state law, as a concern of the states, which would make it inappropriate to infer a cause of action based solely on federal law? *Id.* at 78, 95 S.Ct. at 2088.

Subsequently, the Supreme Court revisited the issue and concluded that Congressional intent is the dispositive factor in determining whether a private right of action is implicit in a statute. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–246, 62 L.Ed.2d 146 (1979); *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 91, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).

■ As stated above, plaintiff has acknowledged that none of the cases which have examined the issue have found an implied private right of action under the FCUA. Moreover, since the dispositive issue in finding an implied private right of action under a federal statute which does not provide for an express private right of action is Congressional intent, plaintiff cannot establish such an implied right of action from a regulation as he argues. As was also noted above, the regulation promulgated by the NCUA pursuant to the delegation of Congressional authority in the FCUA is not legislation. Therefore, no indication of Congressional intent can be inferred from the regulation.

■ However, even assuming arguendo that this court would be willing to find an implied private right of action from the regulation, as opposed to the statute, plaintiff's argument would fail. In promulgating 12 C.F.R. § 721.2, the NCUA explicitly stated that sales of insurance by federal credit unions would be regulated by state law. The NCUA stated:

> The FCU [Federal credit union] must be in compliance with state insurance laws. This includes state laws on licensing, receipt of compensation and insurance-related unfair or deceptive practices.

50 Fed.Reg. 16464 (Apr. 26, 1985). Thus, applying the fourth *Cort* factor, insurance is an area traditionally regulated by state law, and in promulgating 12 C.F.R. § 721.2, the NCUA gave no indication that sales of insurance by federal credit unions would not be controlled by state law. Therefore, a private right of action could not be implied based upon 12 C.F.R. § 721.2.

### B.

■ Plaintiff also argues that the district court erred in finding that no private right of action can be created under the federal common law. Plaintiff asserts that there is a unique federal interest in uniform regulation of 12 C.F.R. § 721.2, which supports a finding of a private right of action under federal common law. In addition, plaintiff asserts that a private right of action must be created under the federal common law because in the absence of such a remedy, no reasonable alternative to the relief sought will exist. Plaintiff asserts that if the NCUA were to enforce the FCUA with regard to DFCU's alleged violation, the NCUA could only levy a penalty payable to the United States Treasury against DFCU. Thus, plaintiff asserts that in the absence of a private right of action under federal common law, he and the putative class will have no remedy available to them which would permit them to recover the excess premiums they paid to DFCU.

■ There is no federal general common law. *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). However, in some limited areas, the Supreme Court has recognized that there is both the need and the authority to formulate "federal common law." *See United*

*States v. Standard Oil Co.,* 332 U.S. 301, 308, 67 S.Ct. 1604, 1608, 91 L.Ed. 2067 (1947). Such instances are both "few and restricted" and fall into essentially two categories, viz., those in which a federal rule of decision is "necessary to protect uniquely federal interests" and those in which Congress has given the courts the power to develop substantive law. *Texas Indus.,* 451 U.S. at 640, 101 S.Ct. at 2066 (citing *Wheeldin v. Wheeler,* 373 U.S. 647, 651–52, 83 S.Ct. 1441, 1444–46, 10 L.Ed.2d 605 (1963); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964)).

 Absent Congressional authorization to formulate substantive rules of decision, "federal common law" exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate or international disputes implicating the conflicting rights of the States or relations with foreign nations, and admiralty cases. In such instances, the federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control. *Texas Indus.,* 451 U.S. at 640, 101 S.Ct. at 2066.

What is before us is not a case where Congress has given the courts the authority to develop substantive law. In this case, the matter at issue relates to the sale of insurance, an issue which does not involve unique federal interests, even though the insurance is sold to members of a federal credit union. In *Barany v. Buller,* 670 F.2d 726 (7th Cir.1982), the Seventh Circuit concluded that it should create a private remedy under the federal common law. The plaintiffs in *Barany* were employees of the credit union. Specifically, they were members of the credit union's three-member Credit Committee, positions which were required by the provisions of the FCUA. After the plaintiffs were removed from the Credit Committee, they brought an action challenging their removal. The Seventh Circuit concluded that the plaintiffs' removal from the Credit Union's Credit Committee involved "uniquely federal interests" because the case involved the uniform administration of federal credit unions, which could be achieved only by the application of federal law. *Id.* at 731–32. The Seventh Circuit also based its creation of a "federal common law" remedy on the old common law remedy of quo warranto. *Id.* at 735.

 However, unlike the situation in *Barany,* quo warranto relief would not be proper in this case.[2] Quo warranto is an extremely difficult and uncertain remedy. *Andrade v. Lauer,* 729 F.2d 1475, 1498 (D.C.Cir.1984). Historically, the federal common law remedy of quo warranto has been available only in connection with proceedings over an individual's right to hold an office or position. *See Sundance Land Corp. v. Community First Fed. Sav. and Loan Ass'n,* 840 F.2d 653, 665 (9th Cir. 1988). "Since the remedy by quo warranto, ... is ... employed to test the actual right to an office or franchise, it follows that it can afford no relief for official misconduct and can not be employed to test the legality of the official action of public or corporate officers." *United States ex rel. State of Wis. v. First Fed. Sav. and Loan Ass'n,* 248 F.2d 804, 808 (7th Cir.1957), *cert. denied,* 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 533 (1958). In this case, unlike *Barany,* plaintiff has not been removed from an office within the credit union. Thus, the federal common law remedy of quo warranto would not be applicable to this case.

Furthermore, unlike *Barany,* this case does not involve the internal administration of a federal credit union. Rather, it involves the credit union's practice of making group life insurance available to its members.

In *Rosenberg v. A T & T Employees Fed. Credit Union,* 726 F.Supp. 573 (D.N.J. 1989), the court also found that a private remedy was necessary under the federal common law. In *Rosenberg,* the plaintiff sought to be elected to the credit union's

---

**2.** In this case, we do not reject what the Seventh Circuit said in *Barany;* rather, we believe this case is clearly distinguishable from the situation in *Barany.*

**982**

Board of Directors pursuant to its bylaws. Standard bylaws which federal credit unions must adopt are set forth in 12 U.S.C. § 1758 and the regulations promulgated pursuant to it, 12 C.F.R. § 701.3. *Id.* at 577. The court in *Rosenberg* found that a private remedy could be created under the federal common law because "plaintiff seeks to protect uniquely federal interests, in that he seeks to enforce a federal credit union's bylaws which were mandated by the NCUA." *Id.* at 578.

However, in *Nat'l Temple Non–Profit Corp. v. Nat'l Temple Community Fed. Credit Union,* 603 F.Supp. 807 (E.D.Pa. 1985), the court declined to create a remedy under "federal common law."

> The major distinguishing characteristic between this case and *Barany* is that *Barany* involved the internal administration of federal credit unions. Specifically, it was concerned with what procedures, if any, were required to remove from office members of the credit union's credit committee. Because the Act was intended to establish federal credit unions, a compelling argument can be made for national uniformity in the appointment, and conversely in the removal, of credit union officers.
>
> In this case, however, the internal operating procedures of the credit union are not at issue. Here, the dispute involves first, whether an enforceable lien was created by the document defendant characterizes as a third party loan agreement, and second, assuming the first question is answered in the affirmative, what are the rights and duties of the parties to the agreement. Stated briefly, the dispute concerns the contractual rights of a federally chartered institution and that institution's members. Such disputes are often times regulated by state law. There is no need for national uniformity, and consequently no authority ... to fashion a federal common law remedy.

*Id.* at 810 (citations omitted).

Similarly, in this case, which involves the sale of insurance, there is no need for national uniformity and, consequently, no need to fashion a remedy under "federal common law." Indeed, the NCUA acknowledged as much when it promulgated 12 C.F.R. § 721.2. It stated:

> As noted in the Board's proposal, Federal credit unions' obligation to comply with state insurance laws is not affected by a change to NCUA's regulation. It is not NCUA's intent to interfere with the authority and ability of state insurance commissioners to regulate insurance activities. Although FCU's [federal credit unions] will not be subject to NCUA limits on credit-related and share-related insurance ..., they are subject to any state regulations on all insurance activities.
>
> For example, most states impose licensing requirements upon entities receiving insurance compensation in excess of cost.
>
> \* \* \* \* \* \*
>
> The FCU must be in compliance with state insurance laws. This includes state laws on licensing, receipt of compensation and insurance-related unfair or deceptive practices. Various methods of receiving insurance compensation may be proper under different state laws.

50 Fed.Reg. 16463–64 (Apr. 26, 1985). Thus, the language of the NCUA demonstrates that there is no need for uniformity in the sale of insurance by federal credit unions. Rather, the NCUA recognized that such insurance would be regulated by state law. In *Wallis v. Pan American Petroleum Corp.,* 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966), the Supreme Court set forth the nature of a federal interest required to apply federal common law:

> In deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a significant conflict between some federal policy or interest and the use of state law ... must first be specifically shown ... Even where there is related federal legislation in an area ... it must be remembered that "Congress acts ... against the background of the total corpus juris of the states ..."

(citing Hart & Wechsler, *The Federal Courts and the Federal System* 435 (1953)).

In this case, no uniquely federal interest exists, and no conflict between the FCUA and the traditional power of the states to regulate insurance has been shown. Therefore, the district court correctly concluded that there was no need to create a remedy under the "federal common law" presented by this case.

## C.

Finally, it should be noted that because the district court properly dismissed plaintiff's federal claims for lack of subject matter jurisdiction, the district court also was within its discretion to dismiss plaintiff's pendent state law claims without prejudice. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## III.

For the foregoing reasons, the district court is AFFIRMED.