Vasilios C. **MADIAS,** Plaintiff,

v.

**DEARBORN FEDERAL CREDIT UNION, a Federal Credit Union,** Defendant.

Civil Action No. 96–40043.

United States District Court, E.D. Michigan, Southern Division.

May 31, 1996.

§§ 1751–1795k (hereinafter "the Act"), is violated by one of defendant's bylaws which restricts who may run for election to defendant's board of directors (hereinafter "the Board"). The facts are undisputed. Both sides have moved for summary judgment. For the following reasons, this court will grant defendant's motion for summary judgment.

## I. Factual Background

Members of defendant credit union may be eligible for election to the Board by one of two ways: (1) being selected by the defendant's nominating committee, or (2) by obtaining 500 member signatures. Plaintiff desired to be a candidate for one of the three Board positions being elected on February 17, 1996. Plaintiff was not selected by the nominating committee, but did submit the requisite number of signatures in a timely manner.

However, one of defendant's bylaws, Article VII, Section 1 (hereinafter "the Bylaw"),[1] also requires that all nominees for the Board be employees of one of the employers listed in defendant's field of membership. The Bylaw is not one of the standard bylaws implemented by the National Credit Union Administration, (hereinafter "NCUA"), which is the federal agency currently responsible for regulating federally chartered credit unions. In 1960, however, the Bylaw was approved after submission to the Bureau of Federal Credit Unions (the agency then charged with responsibility to approve such amendments).

Plaintiff does not meet the requirements set forth in the Bylaw.[2] Accordingly, defendant notified plaintiff that his name would not be included on the slate of candidates for positions on the Board. The only members listed on the slate of candidates for the three positions up for election were the three incumbents currently holding those positions.

Elaine Fieldman, Barris Sott Denn & Driker, Detroit, MI, for Defendant.

John G. Coutilish, Garratt & Evans P.C., Bloomfield Hills, MI, for Plaintiff.

*MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Plaintiff requests this court to hold that the Federal Credit Union Act, 12 U.S.C.

---

1. The Bylaw provides, in pertinent part:
   The board shall consist of 9 members, all of whom shall be members of this credit union who qualify for membership as employees described in section 5 of the charter of this credit union.

2. Currently, under the Bylaw approximately 50% of defendant's 156,000 members are not eligible to become a director.

On February 17, 1996, these three incumbents were re-elected to the Board.[3]

## II. Standard of Review

▇▇▇ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

▇▇▇ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

▇▇▇ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990).

## III. Analysis

It is the NCUA's position that the Bylaw violates the FCUA.[4] The NCUA asserts that the *only* limitations that may properly be placed on those wishing to be elected to the board of directors of a federal credit union are those expressly stated in the Act or described in the NCUA's standard bylaws. This court must first address the level of deference it must give to the NCUA's position.

▇▇▇ Plaintiff and the NCUA assert that this court must give great deference to the NCUA's position, accepting it as long as it is a reasonable interpretation of the Act, even if it would not be this court's preferred interpretation. *See Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107–08, 84 L.Ed.2d 90 (1985); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–85, 81 L.Ed.2d 694 (1984). *Chevron* and *Chemical Mfrs.*, the cases cited by plaintiff and the NCUA, dealt with a federal court's interpretation of a federal agency's *regulations*, how-

---

3. Plaintiff moved this court for a preliminary injunction to stop the election. This motion was denied because plaintiff failed to demonstrate that irreparable harm would occur if the motion were not granted. *Madias v. Dearborn Fed. Credit Union*, 916 F.Supp. 659 (E.D.Mich.1996).

4. The NCUA has submitted various letters to the parties and the court in this matter. Further, this court granted leave to the NCUA to file an amicus brief.

ever.[5] Thus, if NCUA had promulgated a regulation that (1) banned federal credit unions from placing non-standard eligibility requirements on board members, and (2) invalidated any such requirements that had been previously approved, then this court would have to give great deference to that regulation, overturning it only if it were unreasonable or if "Congress has clearly expressed an intent contrary to that of the Agency...." *Chemical Mfrs.*, 470 U.S. at 125, 105 S.Ct. at 1107. Such deference is justified because:

> [w]hen Congress has delegated to an agency the authority to make rules having [the] force of law and the agency uses the proper procedure to act reasonably and within the delegated power, the reviewing court has no more power to substitute [its] judgment for that of the reviewing agency than it has to substitute [its] judgment for that of Congress in determining the content of a statute.

*Daughters of Miriam Ctr. for the Aged v. Mathews*, 590 F.2d 1250, 1257–58 (3rd Cir. 1978). *See Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2782.

■ Such is not the case here, however. In this case, the court is deciding the weight to be afforded an agency's legal opinion, not codified in any federal regulations promulgated by that agency. Such opinions,

> while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier, and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). This court will use this standard, rather than the deferential standard of *Chemical Mfrs.*, in determining whether to adopt the NCUA's position.

This court will now consider the language of the FCUA. 12 U.S.C. § 1761(a) provides, in pertinent part, that "[t]he management of a Federal credit union shall be by a board of directors.... The board shall consist of an odd number of directors, at least five in number, to be elected annually by and from the members as the bylaws provide." 12 U.S.C. § 1785(d) provides, in pertinent part, that "[e]xcept with prior written consent of the Board ... any person who has been convicted of any criminal offense involving dishonesty or a breach of trust ... may not ... otherwise participate, directly or indirectly, in the conduct of the affairs of any insured credit union...." Together, these provisions expressly state that only members who have not been convicted of *crimen falsi* may be eligible for election to the board of directors of a federal credit union, and that such elections are also governed by the bylaws of a particular credit union.

■ With regard to the adoption of bylaws, 12 U.S.C. § 1758 provides:

> In order to simplify the organization of Federal credit unions the Board shall from time to time cause to be prepared a form of organization certificate and a form of bylaws, consistent with this Act, which shall be used by Federal credit union incorporators, and shall be supplied to them on request. At the time of presenting the organization certificate the incorporators shall also submit proposed bylaws to the Board for its approval.

Thus, the only limit placed on bylaws is that they must be "consistent with" the FCUA.

■ 12 C.F.R. § 701.2 expressly incorporates by reference the NCUA's standard bylaws. These bylaws, and standard amendments to these bylaws, may be adopted by a federal credit union without prior approval by the NCUA. Non-standard bylaws, however, must be approved by the NCUA in writing before a federal credit union may adopt them. The approval of non-standard bylaws is placed within the sound discretion of the NCUA.

---

5. *Chevron* involved a challenge to 40 C.F.R. § 51.18(j)(1), and *Chemical Mfrs.* involved a challenge to 40 C.F.R. § 403.13.

Plaintiff and the NCUA concede that the FCUA does not expressly preclude credit unions from adopting bylaws that create non-standard eligibility requirements for directors. Indeed, § 1761(a) states that elections will occur "as the bylaws provide." Thus, Congress clearly intended that federal credit unions could use their bylaws to further define their election requirements. Nonetheless, plaintiff and NCUA argue that because of Congress's desire for uniformity and democracy in the administration of credit unions, the FCUA should be interpreted to ban any non-standard bylaws relating to eligibility restrictions on directors.

This court recognizes Congress's general desire for, and the sound policy reasons supporting, uniform administration of federally chartered credit unions. *See Barany v. Buller,* 670 F.2d 726, 731 (1982); *Rosenberg v. AT & T Employees Fed. Credit Union,* 726 F.Supp. 573, 578 (D.N.J.1989). This court also recognizes the desirability of democratic governance of credit unions. *See Barany,* 670 F.2d at 734; *La Caisse Populaire Ste. Marie v. United States,* 563 F.2d 505, 509 (1st Cir.1977). Nonetheless, this court is not convinced that Congress, even though guided by these principles, intended the FCUA to prohibit *all* bylaws containing non-standard eligibility restrictions on directors *that were approved by the appropriate federal agency before being adopted.*

First, there is no indication that Congress intended a per se rule against bylaws imposing eligibility requirements for directors. Congress allowed for the approval of all bylaws that were "consistent with" the FCUA. This language does not indicate a desire for a per se rule. Had Congress intended a per se rule against bylaws containing additional eligibility requirements for directors it would have so stated.

Second, there is no indication that Congress believed that standard bylaws restricting the eligibility of directors (e.g., age restrictions) are fine, but that non-standard bylaws that are approved by the appropriate federal agency are prohibited. Rather, Congress intended that non-standard bylaws which are approved by the appropriate federal agency have the same effect as standard bylaws, provided that the bylaws are consistent with the FCUA. This is true even if those bylaws restrict the eligibility of directors. If Congress did not want non-standard bylaws to govern elections of directors, § 1761(a) would have provided that elections will occur "as the *standard* bylaws provide." Instead, Congress chose not to distinguish between standard and non-standard bylaws, and no such distinction is supported by the Congressional record.

Third, the NCUA's position is contradicted by its current practice. Currently, the NCUA approves non-standard bylaws that require directors to be at least 21 years of age. The NCUA contends that this is different because it is "based on the inherent authority of a board to establish a restriction based on legal competence and responsibility." It points to no authority, however, for the proposition that Congress recognized a distinction between eligibility requirements that are based on the legal competence of directors and eligibility requirements that are not. Thus, there is no basis to believe that Congress approved of the former, but prohibited the latter.

This court will readily concede that there are sound policy reasons for the NCUA's current practice of rejecting non-standard bylaws such as defendant's Bylaw, while approving non-standard bylaws that set a minimum age for directors. A bylaw does not violate the FCUA simply because the NCUA believes that it represents unsound policy and should not be approved, however. Whenever the NCUA, for whatever reason, changes its practice concerning the approval of non-standard bylaws, those bylaws which have fallen out of favor do not necessarily violate the FCUA. If, for example, in the future, the NCUA decides that it will no longer approve non-standard bylaws that raise the minimum age of directors to 21, this court would not be required to annul those non-standard bylaws that are currently being approved by the NCUA that raise the age to 21.

Although a bylaw is not prohibited by the FCUA simply because the NCUA rejects it, a bylaw is not necessarily valid under the FCUA because the NCUA (or its predeces-

sor) approves it. NCUA's discretion, while great, is not unfettered. Under § 1758, by-laws must be "consistent with" the FCUA. Clearly, a bylaw that automatically allowed convicted embezzlers to run for election to a federal credit union board without the prior written approval of that board would be inconsistent with 12 U.S.C. § 1785(d), even if approved by the NCUA. Alternatively, a bylaw that allowed only 1% of the members of a credit union to vote for the board of directors would be inconsistent with the FCUA, even if approved, because it would subvert the fundamental democratic nature of that credit union.

Therefore, although this court holds that not *all* non-standard bylaws that restrict the eligibility of directors are inconsistent with the FCUA and therefore invalid, the question remains whether defendant's Bylaw, under which approximately 50% of defendant's members are ineligible to sit on the Board, is inconsistent with the FCUA because it subverts the democratic governance that is the hallmark of credit unions. This court holds that defendant's Bylaw does not subvert the ideal of democratic governance of credit unions. The members of the credit union may all exercise their right to vote, even if they cannot run themselves. Also, over 70,000 people may run as candidates for the Board. With that many potential candidates, it is difficult to believe that certain viewpoints will be excluded from the Board. All members, even those who are ineligible to sit on the board, should be able to find an eligible candidate who will adequately represent their views. Even with the Bylaw, defendant still maintains a level of democratic governance that sufficiently distinguishes it as a credit union, rather than a bank. Defendant's Bylaw is consistent with the language of the FCUA and does not belie Congress's general intent to foster the democratic governance of federal credit unions.

In short, this court holds that defendant's Bylaw does not subvert the principles of uniformity and democracy in the administration of defendant credit union so as to violate the FCUA. The Bureau of Federal Credit Unions acted within its sound discretion when it approved defendant's Bylaw.

*ORDER*

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment be **GRANTED** and that plaintiff's motion for summary judgment be **DENIED**.

**SO ORDERED.**

